Filed 12/11/14  Silkes v. Select Portfolio Servicing CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ALAN SILKES,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>SELECT PORTFOLIO SERVICING et al.,<br><br>    Defendants and Respondents. | B252857<br><br>(Los Angeles County<br>Super. Ct. No. YC067741) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Ramona G. See, Judge.  Affirmed in part, reversed in part and remanded.


Jenifer J. Anisman, for Plaintiff and Appellant.


Albertson Law and Gina L. Albertson, for Defendants and Respondents.

_____

Plaintiff Alan Silkes appeals from a judgment dismissing his action against defendants Select Portfolio Servicing Inc. (Select Portfolio), Wells Fargo Bank N.A. (Wells Fargo), HarborView Mortgage Loan Trust Loan Mortgage Loan Pass-Through Certificates, Series 2006-12 (HarborView), Bank of America, N.A. (Bank of America), and Countrywide Home Loans (Countrywide; collectively defendants). Silkes's complaint asserted claims related to defendants' alleged breach of a home loan modification agreement. The trial court sustained a demurrer to Silkes's second amended complaint without leave to amend and denied his motion for leave to amend the complaint to add a claim for breach of contract. We conclude the trial court erred in sustaining the demurrer to the claim for breach of the implied covenant of good faith and fair dealing as to three of the defendants. We also conclude that, upon remand, Silkes is to be given leave to amend his wrongful foreclosure claim. We otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

We take the relevant facts from the operative second amended complaint and the documents judicially noticed below.[1] (*Rufini v. CitiMortgage, Inc.* (2014) 227 Cal.App.4th 299, 301 (*Rufini*).) In 2000, Silkes and his wife (collectively Silkes) took out a purchase money loan of $383,600 to buy a condominium in Redondo Beach. Silkes refinanced the home approximately four more times. In September 2006, Silkes executed a $971,250 note secured by a deed of trust. The deed of trust identified Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee of lender Central Pacific Mortgage.

The home loan allowed for negative amortization and required different payment amounts each month. Eventually, Silkes learned from Bank of America and "third party sources" that he was eligible for a loan modification. In September 2009, Silkes executed

---

[1]     Silkes did not object to defendants' request for judicial notice.

2

a loan modification agreement.[2] The agreement allowed Silkes to make monthly payments of $2,914.58 for five years. The $2,914.58 payment consisted of an interest-only payment of $2,405.16 and an escrow payment of $509.42.

Despite the agreement, Silkes began receiving mortgage statements demanding payments greater than $2,914.58. Silkes made many unsuccessful phone calls in an attempt to try to "straighten it out."[3] A September 2009 "escrow account review statement" indicated that effective November 2009, the escrow payment would change from $509.41 per month to $1,822.53 per month. A December 2009 statement requested payment of $4,227.69. A January 2010 statement offered three payment options, all of which included an escrow payment of $1,822.53.[4] The complaint alleges Silkes "was surprised to see such a large escrow payment increase in spite of the loan mod which was purported to absorb past amounts owed."

A January 2010 letter advised Silkes the escrow payment would be reduced to $696.42, and his new monthly payment would total $3,101.58. Yet, "[d]efendants failed to adjust prior amounts owed and despite many phone calls and requests, failed and refused to offer an explanation for the erratic escrow amounts demanded in spite of the fact that it was based on Plaintiff's property tax assessment, an easily ascertainable and identifiable amount."

In or around July 2011, Silkes hired a lawyer to handle the situation. The lawyer attempted to negotiate a new payment plan for the loan. In September 2011, MERS assigned the deed of trust to Bank of America, "successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP."

---

[2] The complaint alleges that according to the loan modification agreement, "by October 1, 2009, the principal balance had grown to $1,110,0073.63."

[3] The complaint alleged: "[W]hile the representatives on the other end of the line feigned understanding and an intent to 'take care of it,' nothing got done."

[4] One option was an interest-only payment of $4,226.89, plus the escrow amount; the other two options included an amortized payment in addition to the escrow.

3

In November 2011, Bank of America notified Silkes that servicing of the loan was being transferred to Select Portfolio. In March 2012, Select Portfolio informed Silkes by letter that it was unable to provide assistance regarding a new loan modification.

In April 2012, Bank of America transferred all beneficial interest under the deed of trust to Wells Fargo as Trustee, on behalf of the Holders of the HarborView Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2006-12. In June 2012, a notice of default was recorded indicating Silkes was $89,108.12 in arrears. In September 2012, Silkes filed suit.

### *The Complaint*

The trial court sustained demurrers to the original and first amended complaints, with leave to amend. Silkes filed a second amended complaint and also sought leave to add a claim for breach of contract. The complaint asserts nine causes of action: (1) breach of the implied covenant of good faith and fair dealing; (2) intentional misrepresentation; (3) wrongful foreclosure; (4) slander of title and credit; (5) intentional interference with contractual relations; (6) conversion; (7) promissory estoppel; (8) quiet title; and (9) "action to remove cloud on title." In a section titled "Tender," the complaint asserts: "Plaintiff can tender but will not tender the amount due because defendants and each of them fail and refuse to represent to plaintiff the true and correct amount of tender required. . . . Even if Plaintiff knew the true and correct amount of tender required, Plaintiff cannot tender the amount due because plaintiff cannot ascertain the entity justifiably entitled to receive such tender."

The complaint also alleges Silkes "did substantially all of the significant things required of him but he was excused from making loan payments to defendants because defendants thereafter immediately and wrongfully inflated the amount of the monthly statement and refused to accept the amount agreed upon and bargained for in the loan modification. Moreover, after discovering the error, Defendants failed and refused to correct it."

4

*The Demurrer*

Defendants demurred to the second amended complaint. Defendants argued the entire complaint was barred by the "tender rule": they asserted Silkes had not tendered the full amount of the secured indebtedness, thus he could not prevail on any of his claims. As to the claim of breach of the implied covenant of good faith and fair dealing, defendants contended Select Portfolio and Wells Fargo could not be liable for a breach relating to the loan modification agreement because they did not acquire an interest in the loan until nearly three years after the agreement was executed. Defendants further argued the modification expressly stated the monthly escrow amount was subject to change, thus the complaint was fatally uncertain in its allegation that any defendant frustrated Silkes's right to receive the benefits of the agreement. Defendants further argued Silkes had not alleged the "appropriate defendant" executed and memorialized the loan modification agreement, thus his claim was barred by the statute of frauds.

Defendants argued the intentional misrepresentation claim was time-barred and substantively failed because it was not pled with specificity. Defendants challenged the wrongful foreclosure claim as uncertain because the "adjustable nature" of the monthly payments was disclosed in the loan modification; Silkes did not plead Select Portfolio or Wells Fargo was involved in the negotiation or execution of the loan modification, and the complaint did not state how defendants breached the agreements. Defendants further asserted the assignments were lawful, actual possession of the note was not required, and Silkes's claim was premature because no foreclosure sale had taken place. Defendants argued the remaining claims also failed as a matter of law for similar reasons.

In support of the demurrer, defendants requested judicial notice of several documents, including an August 29, 2009 letter from Bank of America Home Loans to Silkes notifying him of his eligibility for a loan modification. The letter accompanied a loan modification agreement, and stated: "The enclosed modification agreement fixes your interest rate at 2.600%, and result [*sic*] in a new monthly payment amount of $2914.58. This rate will take effect on 1st day of October, 2009 and will be fixed for a period of five years. At the end of that period and each year after, your interest rate may

5

increase." A footnote at the bottom of the letter stated: "This payment is subject to change if your escrow payment changes." An attached rate change notice identified the new interest payment as $2,405.16 per month, effective November 1, 2009. The loan modification agreement stated the "[b]orrower promises to make monthly payments of interest (Interest Only Payment) of U.S. $2,914.58 beginning on the 1st day of November, 2009, and continuing thereafter on the same day of each succeeding month. . . ."

Defendants also requested judicial notice of several recorded documents, including the original deed of trust, two assignments, a substitution of trustee, and a June 2012 notice of default and election to sell under deed of trust.

Defendants opposed Silkes's motion for leave to amend the complaint to add a claim for breach of contract. Defendants asserted the motion was procedurally deficient, granting leave would prejudice defendants by unfairly prolonging the proceedings, and the amendment was unnecessary because the proposed claim duplicated other causes of action alleged in the complaint.

In October 2013, the trial court sustained the demurrer without leave to amend, denied the motion for leave to add a breach of contract claim, and entered a judgment dismissing the complaint. Silkes timely appealed from the judgment.[5]

## DISCUSSION

When reviewing an order sustaining a demurrer without leave to amend, "we determine, independently of the trial court, whether, assuming the facts alleged in the complaint are true, a cause of action has been or can be stated." (*Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 918 (*Bushell*), citing *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "We construe the complaint 'liberally . . . with a view to substantial justice between the parties' (Code Civ. Proc., § 452) and treat it ' " 'as admitting all material facts properly pleaded, but not contentions, deductions or

---

[5]     In July 2013, Silkes filed a petition for writ of supersedeas in this court to halt a foreclosure sale scheduled for August 21, 2014. This court denied the petition.

6

conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.'  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." '  [Citations]."  (*Rufini, supra,* 227 Cal.App.4th at p. 304.)

"If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer."  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38.)  On the other hand, if the trial court relied on an improper ground in sustaining the demurrer, the reviewing court will still affirm if a proper ground for sustaining the demurrer exists, "whether or not the defendants asserted the proper ground in the trial court."  (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 880, fn. 10.)

"When the court sustains a demurrer without leave to amend, ' "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff." [Citations.]'  [Citation.]  Whether the plaintiff will ultimately be able to prove the complaint's allegations is not relevant.  [Citation.]"  (*Rufini, supra,* 227 Cal.App.4th at p. 304.)

## I.  Tender

As an initial matter, we reject defendants' contention that the failure to allege tender of the secured indebtedness is fatal to the entire complaint.  In general, " '[a] full tender must be *made* to set aside a foreclosure sale, based on equitable principles.' [Citation.]"  (*Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1280 (*Pfeifer*).)  However, "[c]ourts have recognized various exceptions to the tender rule, including an exception based on an allegation that a foreclosure sale is void. [Citations.]"  (*Ibid.*)  When a plaintiff adequately alleges that a foreclosure sale was void because the defendant lacked a contractual basis to exercise the power of sale, no allegation of full tender is necessary.  (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1063 (*Chavez*).)  Courts also "have not required tender when the

7

lender has not yet foreclosed and has allegedly violated laws related to avoiding the necessity for a foreclosure." (*Pfeifer, supra,* 211 Cal.App.4th at p. 1280.)

In this case, the complaint does not allege a foreclosure sale has taken place and it includes claims other than wrongful foreclosure. As discussed in greater detail below, the primary theory of the complaint is that defendants lack a contractual basis to exercise the power of sale because the loan was modified, Silkes performed, and defendants breached the loan modification agreement. Thus, that Silkes did not allege tender is not necessarily fatal to the complaint in its entirety. (See *Rufini, supra,* 227 Cal.App.4th at pp. 307-308; *Barroso v. Ocwen* (2012) 208 Cal.App.4th 1001, 1016-1017 (*Barroso*).) We must therefore consider the individual causes of action alleged.

## II.    Breach of Implied Covenant of Good Faith and Fair Dealing

We conclude the complaint sufficiently alleges a breach of the implied covenant of good faith and fair dealing. Even if the loan modification agreement expressly gave defendants the discretion to change the escrow payment, that term would not necessarily eliminate a claim based on the covenant of good faith and fair dealing.

### A.  Basic Elements

"The law implies in every contract a covenant of good faith and fair dealing, meaning that neither party will do anything which will injure the right of the other to receive the contract's benefits." (*Bushell, supra,* 220 Cal.App.4th at pp. 929-930.) "Although breach of the implied covenant often is pleaded as a separate count, a breach of the implied covenant is necessarily a breach of contract." (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 885, fn. omitted.) Thus, to allege a cause of action for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege a contract, plaintiff's performance or excuse for nonperformance, that defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract, and the resulting damages to the plaintiff. (*Thrifty Payless, Inc. v. Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1244 (*Thrifty Payless*); see also CACI 325.)

8

The covenant " ' "not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose." ' [Citation.] [¶] 'The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith.' [Citation.]" (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 76, citing *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 372.) Further, the covenant "functions ' "as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." ' [Citation.]" (*Thrifty Payless, supra,* 218 Cal.App.4th at p. 1244.)

Defendants argue Silkes failed to adequately plead a breach of the implied covenant because he has not alleged any facts showing defendants failed to act in a fair manner or to exercise good faith. They contend that since the "express terms" of the loan modification agreement stated the escrow amount was subject to change, it was within the reasonable expectation of the parties that the monthly payment amount required of Silkes would change. Silkes counters that even if the loan modification agreement allowed for variable escrow payments, he "reasonably expected it to be approximately one twelfth of his annual property taxes as provided by law . . . ."

While the loan modification agreement may have allowed defendants to change the required escrow payment at their discretion, the complaint alleges that, without explanation, defendants increased the escrow payment from an estimated $509.41 per month to $1,822.53 per month. As alleged in the complaint, and as Silkes has subsequently argued, this was an arbitrary and unforeseeable increase since the escrow payments were earmarked for payment of property taxes on the property, and those taxes were a "fixed easily ascertainable amount." The benefit to Silkes of the loan modification agreement was a reduction in payments so that he might avoid default.

9

The complaint alleged defendants arbitrarily increased the escrow amount by more than three times the estimated amount. This was sufficient to state a claim that defendants failed to exercise their discretion to change the escrow amount in good faith, thereby depriving Silkes of the benefits of the loan modification agreement. (See *Acree v. General Motors Acceptance Corp.* (2001) 92 Cal.App.4th 385, 395-396 [substantial evidence of breach of implied covenant where automobile financier had discretion to purchase auto insurance covering borrowers and discretion in the method of computing a refund upon cancellation of the policy; contract was silent on issue; discretion was exercised in conflict with borrowers' legitimate expectations].)

The complaint also sufficiently alleged the other elements of performance or excuse and damages. Under the terms of the contract, as pled in the complaint, Silkes was required to remit to defendants monthly payments of $2,914.58. However, Silkes's theory is that he was excused from making payments because, from the outset, defendants demanded a payment that differed from the agreed-upon amount, and "refused" to accept the payment set forth in the agreement. While, in general, a party to a contract must perform or make an offer of performance in order to hold the other party liable for a breach, "no tender need be made at all if it would obviously be useless, as where the other party repudiates the contract and gives notice of his or her refusal to perform, or if the other party admits an inability to perform." (1 Witkin, Summary of Cal. Law (9th ed. 1990) Contracts, § 774; *Enfield v. Hoffman Motor Co.* (1953) 117 Cal.App.2d 800, 807.) Liberally construed, Silkes's allegation that defendants "refused" to accept the amount agreed upon in the loan modification agreement was sufficient to satisfy the performance or excuse requirement.**6**

---

**6**     We again note that in reviewing the order sustaining the demurrer without leave to amend, we are not concerned with whether Silkes will ultimately be able to prove the complaint's allegations. Indeed, the complaint's allegation that the escrow payment demanded was significantly reduced by January 2010, and the vague nature of his allegations of refused payments, suggest Silkes may have difficulty proving the elements of his claim, including his performance or excuse. However, at this stage we liberally

10

As to damages, the complaint alleges the inflation of the monthly escrow amount placed the monthly payment amount "out of reach," Silkes hired and paid an attorney to try to remediate the situation, a notice of default was filed, and he suffered at least $125,000 in monetary damages. We conclude the complaint adequately alleges damages from the breach of the implied covenant.

## B. Which Defendants

Defendants have argued the complaint fails to allege any facts to support liability against any defendant other than Bank of America on a breach of contract theory. Although we agree as to Countrywide and Select Portfolio, as to Wells Fargo and HarborView, we find the complaint's allegations, liberally construed, sufficient. The complaint alleges Wells Fargo and HarborView were the assignees and transferees of all beneficial interest under the deed of trust. Liberally read, the complaint alleges they too failed to honor the loan modification agreement by refusing to accept payments consistent with the agreement. (See *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 896-897 [recognizing potential liability of successor to original lender on breach of contract theory where successor may have assumed predecessor's liabilities and plaintiff alleged successor itself continued to breach by its own conduct].)

We agree, however, that the complaint fails to state a claim for breach of the implied covenant against Countrywide and Select Portfolio. The complaint's general theory is that the defendants breached their obligations to Silkes in connection with the loan modification agreement, and in the subsequent initiation of foreclosure proceedings that flowed from that breach. As to Countrywide, the complaint alleges only that Countrywide serviced the mortgage, at an unspecified time. According to the complaint, in November 2011, Bank of America notified Silkes it had assigned to Select Portfolio the right to collect payments from Silkes. The complaint further alleges that Select

---

construe the complaint and we cannot conclude that Silkes will, as a matter of law, be unable to prove the breach he alleges. (*Rufini, supra,* 227 Cal.App.4th at p. 307.)

11

Portfolio subsequently acted as "attorney in fact" for Bank of America in assigning and transferring all beneficial interest under the deed of trust to Wells Fargo on behalf of HarborView. The complaint also generally alleges the defendants all acted as agents for the other defendants.

These allegations do not provide a basis for holding either Countrywide or Select Portfolio liable on the implied covenant theory advanced in the complaint. The complaint does not allege Countrywide or Select Portfolio were parties to the loan modification agreement.[7] (See e.g., *Conder v. Home Savings of America* (C.D.Cal. 2010) 680 F.Supp.2d 1168, 1174 [fact that loan servicer entered into contract with lender to service plaintiff's loan did not create contractual privity between the loan servicer and plaintiff]; *Diamond v. One West Bank* (2010 D. Ariz.) 2010 WL 1742536, *3 [loan servicer had no beneficial interest in the note and was not a party to the loan modification agreement; acted only to collect payments; no valid breach of contract claim].) Further, although the complaint alleges the defendants were all agents, employees, or representatives of one another, an agent is not generally liable on a contract made in the name of the principal. (*Epic Communications, Inc. v. Richwave Technology, Inc.* (2009) 179 Cal.App.4th 314, 329.) While the complaint alleges Select Portfolio became the loan servicer in November 2011, the complaint includes no allegations identifying any conduct by either Countrywide or Select Portfolio in connection with the escrow amounts or the subsequent foreclosure activity.

The complaint fails to state a breach of contract related claim against Countrywide or Select Portfolio. Silkes has also failed to show there is a reasonable possibility of amendment to state a claim against these two defendants. The trial court did not abuse its

---

**7** To the extent the complaint includes Select Portfolio in the allegation that Silkes executed a loan modification with Bank of America and its "subsequent transferees," this allegation is contradicted by the more specific allegation that Select Portfolio first came into the picture in November 2011 as Bank of America's assignee of the right to collect payments. (*Perez v. Golden Empire Transit Dist.* (2012) 209 Cal.App.4th 1228, 1235-1236 [specific allegations in a complaint control over an inconsistent general allegation].)

12

discretion in sustaining the demurrer without leave to amend as to the implied covenant cause of action against Countrywide and Select Portfolio.

In sum, Silkes adequately alleged a claim for implied breach of the covenant of good faith and fair dealing as to Bank of America, Wells Fargo, and HarborView.[8]

## III. Leave to Amend to Add a Breach of Contract Claim

Silkes contends the trial court abused its discretion in denying him leave to amend his complaint to add a claim for breach of contract. We find no abuse of discretion. (*Bettencourt v. Hennessy Industries, Inc.* (2012) 205 Cal.App.4th 1103, 1111.)

Silkes sought leave to add a claim for breach of an express covenant in the loan modification agreement. The proposed cause of action alleges the loan modification agreement included "clear and unambiguous payment terms" providing a monthly interest payment of $2,405.16 and an escrow payment of $509.42, for a total monthly payment of $2,914.58. Defendants argue this allegation was directly contradicted by the agreement, which stated the escrow payment was subject to change.

The trial court took judicial notice of an eight-page document defendants identified as a "true and correct copy of the August 29, 2009 Loan Modification Agreement entered into by and between PLAINTIFF (and his wife) and BAC Home Loans Servicing, LP, which was signed and notarized by PLAINTIFF on September 18,

---

[8] We also reject defendants' argument that any breach of contract claim was barred by the statute of frauds because it was not signed by Bank of America. While a forbearance agreement must be " 'memorialized by a writing subscribed by the party to be charged or by the party's agent. . . . [t]he signature of the party to be charged 'need not be manually affixed, but may in some cases be printed, stamped or typewritten.' [Citation.]" (*Chavez, supra,* 219 Cal.App.4th at p. 1057.) Further, the signature of the party to be charged need not be at the end of the writing. (*Marks v. Walter G. McCarty Corp.* (1949) 33 Cal.2d 814, 820.) Here, defendants have asserted the loan modification agreement consists not only of the document titled "loan modification agreement," but also the accompanying cover sheet, which was signed by a Senior Vice President for BAC Home Loans Servicing, and was issued on Bank of America letterhead. The document itself indicated Silkes needed only to sign the enclosed agreement for the loan modification to take effect. This was sufficient to withstand demurrer on the statute of frauds issue.

13

2009." The document begins with a two-page signed letter, addressed to Silkes and his wife, advising them of an "Important Message About Your Loan." The letter states Silkes is eligible for a loan modification with "a variety of options to help." The letter further states: "In order to take advantage of the options above, you must agree to the enclosed modification agreement and return it to us as indicated below. [¶] The enclosed modification agreement fixes your interest rate at 2.600%, and result [*sic*] in a new monthly payment amount of $2,914.58. [Footnote: This payment is subject to change if your escrow payment changes.] This rate will take effect on 1st day of October, 2009 and will be fixed for a period of five years."

The second page of the letter informs Silkes what to do to "accept the enclosed modification." The third page identifies "important terms," such as: "As explained above, your payment is subject to change annually subject to the terms of the enclosed modification." It also lists the delinquent balance on the Silkes account as of the date of the letter: "The total amount and breakdown of delinquent amounts that would be added to your loan under the terms of the enclosed modification are as follows: Interest: $68,499.49; Fees: $165.00; Escrow: $13,434.65; Total: $82,099.14."

The fourth page is a "Rate Change Notice" that includes the section: "How We Calculate Your New Monthly Payment." The notice identifies the new interest payment as $2,405.16, and states: "If you have an escrow account, this notice does not address any changes to your escrow payment. Please refer to your monthly statement for information regarding your current escrow payment."

The last four pages are the "Loan Modification Agreement." Paragraph 2, subdivision ii states: "The date on which Borrower will be required to make a first payment consisting of both principal and interest . . . shall be the first monthly payment due on the 1st day of October, 2019. Until the First Principal and Interest Payment Due Date Borrower promises to make monthly payments of interest (Interest Only Payment) of U.S. $2,941.58 beginning on the 1st day of November, 2009, and continuing thereafter on the same day of each succeeding month (Interest-Only Period)." The agreement does not mention escrow payments.

14

Silkes's proposed breach of contract claim alleges he entered into a written loan modification providing for a "total monthly payment of $2914.58, said exact amount being clearly, unequivocally and unambiguously expressed by the loan modification contract first page summary and subsequent statements, but somewhat less unambiguously expressed in the loan modification itself." Yet, the documents Silkes accepts constitute the agreement—the cover pages and the document titled "loan modification agreement"—contradict this allegation. The first page of the document clearly indicates the escrow payment is subject to change.

We acknowledge that when an ambiguous contract is the basis of an action, " ' "[s]o long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement." ' [Citation.]" (*Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 229.) But here, in light of Silkes's construction of the loan modification agreement, the contract is not ambiguous or susceptible to the interpretation he advances in the proposed cause of action. The only references to the escrow payment in the document indicate it is subject to change, not that it was to be a fixed amount. As a result, Silkes cannot establish defendants breached an express provision of the agreement by changing the escrow payment, as they were allowed to do under the agreement.

The trial court did not abuse its discretion in denying leave to amend the complaint to add a breach of contract claim, based on an alleged breach of an express covenant of the contract.

## IV.    Intentional Misrepresentation

The complaint's second cause of action asserts a claim for intentional misrepresentation against all of the defendants. The complaint alleges the defendants represented Silkes was executing a loan modification "designed in good faith to assist the plaintiff in staying in his home," but they "knew they had no intention of allowing [Silkes] to successfully fulfill the terms of the loan modification." The trial court

15

sustained defendants' demurrer to this claim on the ground that it was not pled with requisite particularity. We agree.

" 'The elements of promissory fraud . . . are: (1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promise to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise[e].' [Citation.] As with any other form of fraud, each element of a promissory fraud claim must be alleged with particularity. [Citation.]" (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1498 (*Rossberg*).)

Silkes contends it was sufficient to name only the corporate defendants as the parties making promises they did not intend to perform, rather than identifying specific individuals. While this may generally be true under some circumstances (see *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 793-794 (*West*)), the complaint in this case does not even specifically identify the corporate entity or entities who made the promises at issue. Instead, the complaint alleges only that Silkes filled out forms, had telephone calls, and "was finally offered" a loan modification. The complaint further alleges Silkes "received statements" inconsistent with the terms of the loan modification as he understood them, but it does not identify which corporate defendant issued the statements. While the complaint alleges Silkes made phone calls to try to rectify the situation, it does not identify the corporate entity or entities Silkes contacted. Failing to even identify the corporate defendants who made the alleged promises falls short of the specific pleading requirements for fraud. (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 763, 766.) The complaint does not "allege with particularity who made the statements, when they were made, what was actually stated, or why they were false." (*Id.* at p. 763.)

16

Further, even assuming Silkes could amend the complaint to address this problem, the complaint also fails to specifically allege reliance and resulting damage from that reliance. " ' "A plaintiff asserting fraud by misrepresentation is obliged to . . . ' "establish a complete causal relationship" between the alleged misrepresentations and the harm claimed to have resulted therefrom.' " [Citation.]' [Citation.] This requires a plaintiff to allege specific facts not only showing he or she actually and justifiably relied on the defendant's misrepresentations, but also how the actions he or she took in reliance on the defendant's misrepresentations caused the alleged damages. [Citation.]" (*Rossberg, supra,* 219 Cal.App.4th at p. 1499.)

Silkes's complaint alleges defendants represented "that [Silkes] was executing a loan modification designed in good faith to assist [him] in staying in his home," and he "justifiably relied on this representation because he believed the plethora of mailings from lender asserting that he was eligible for a loan modification and that they want to try to help him stay in his home." The complaint further alleges that "[a]s a direct and proximate result of the above allegations, [Silkes] has been damaged in an amount to be proved at time of trial."

Neither these allegations, nor any allegations elsewhere in the complaint satisfy the requirement that reliance on a specific promise and resulting harm be alleged with particularity. Aside from alleging the conclusory fact that Silkes relied on defendants' representation, the complaint does not allege what, if anything, Silkes did in reliance on the representation, or what specific damages Silkes suffered as a result of his reliance. Although the complaint alleges a notice of default was recorded, the complaint does not allege Silkes's reliance on the promised loan modification caused him to default on his loan or prevented him from curing any existing default. (*Rossberg, supra,* 219 Cal.App.4th at pp. 1499-1500.)

*Bushell* provides a helpful contrast. In *Bushell*, the plaintiffs alleged the defendant falsely promised they would be offered a permanent loan modification under certain conditions. A trial period plan stated that as long as the plaintiffs complied with the terms of the plan, the defendant would not start foreclosure proceedings or conduct a

foreclosure sale if proceedings had already started. The plaintiffs made 26 payments under the plan, yet the defendant initiated foreclosure proceedings. (*Bushell, supra,* 220 Cal.App.4th at p. 930.) The reviewing court concluded the allegations were sufficient to state a fraud cause of action for false promise. With respect to reliance and damages, the court found sufficient allegations that the plaintiffs were "damaged by the considerable time they spent repeatedly contacting Chase and repeatedly preparing documents at Chase's request; by discontinuing efforts to pursue a refinance from other financial institutions or to pursue other means of avoiding foreclosure (such as bankruptcy restructuring, or selling or renting their home); by having their credit reports further damaged; and by losing their home and making it unlikely they could purchase another one." (*Id.* at p. 928; see also *Fleet v. Bank of America N.A.* (2014) 229 Cal.App.4th 1403, 1411 [plaintiffs relied on false promise by making payments under trial loan modification plan and refraining from taking other measures to save their home; they were damaged by the loss of their home and the loss of money they expended trying to obtain the loan modification promised to them]; *West, supra,* 214 Cal.App.4th at p. 795 [plaintiff's reliance on misrepresentations caused her to forego taking legal action to stop a foreclosure sale; she also made payments under trial modification plan]; *Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218, 227-229 [justifiable reliance and detriment for promissory estoppel adequately pled by allegations that in reliance on bank's promise to work with borrower to modify loan, borrower did not attempt to save her home under chapter 13 bankruptcy proceedings].)

No such allegations of reliance or resulting damage are included in Silkes's complaint. Further, Silkes has not established the complaint could be amended to cure these defects. We note the trial court sustained the demurrer to this claim in the first amended complaint at least in part because it contained only conclusory allegations. Although that demurrer was sustained with leave to amend, Silkes did not remedy the deficiency. The trial court did not abuse its discretion in sustaining the demurrer to this cause of action in the second amended complaint without leave to amend.

18

## V.     Wrongful Foreclosure

The third cause of action is for wrongful foreclosure.  To maintain a wrongful foreclosure claim, a plaintiff "must allege that (1) defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) the plaintiff suffered prejudice or harm; and (3) the plaintiff tendered the amount of the secured indebtedness or was excused from tendering." (*Chavez, supra,* 219 Cal.App.4th at p. 1062.)

The trial court concluded the wrongful foreclosure claim was premature because the complaint did not allege a foreclosure sale had taken place.  On appeal, Silkes still does not indicate a foreclosure sale has occurred, or that he could amend the complaint to allege he has suffered a foreclosure.  As such, the claim may still be premature.[9] (See *Rosenfeld v. JPMorgan Chase Bank, N.A.* (N.D.Cal. 2010) 732 F.Supp.2d 952, 961.) We need not consider Silkes's entirely unsupported contentions that a wrongful foreclosure claim seeking damages accrues as soon as a notice of default is filed, or that he may recover a claim of "anticipatory wrongful foreclosure."  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [we may treat as waived arguments not supported by legal argument or citation to authority].)

However, in light of Silkes's petition to this court indicating a foreclosure sale was scheduled in August 2014, on remand the trial court should allow Silkes to amend the wrongful foreclosure claim.  Assuming Silkes can allege a sale has occurred, the complaint's remaining allegations are sufficient to state a claim for wrongful foreclosure. Liberally construed, the complaint alleges, at least in part, that Silkes was never in default

---

[9]     We also note the complaint does not seek injunctive relief in connection with the wrongful foreclosure claim.  Instead, the complaint seeks only compensatory and exemplary damages. (Cf. *Pfeifer, supra,* 211 Cal.App.4th at pp. 1257, 1281-1282 [reversing order sustaining demurrer to wrongful foreclosure claim seeking restraining order to stop foreclosure proceedings, but concluding plaintiffs had no claim for damages]; *Nguyen v. JP Morgan Chase Bank N.A.* (N.D.Cal. 2013) 2013 WL 2146606, *4 [although foreclosure had not taken place court would allow wrongful foreclosure claim seeking an injunction].)

because the loan was modified, and his performance under the terms of the loan modification agreement was rejected. As such, the theory is that defendants lacked a contractual basis for exercising the power of sale, and any sale was void. Under such circumstances, it would not be necessary for Silkes to tender the amount of indebtedness to pursue his claim. (*Chavez, supra,* 219 Cal.App.4th at pp. 1062-1063; *Barroso, supra,* 208 Cal.App.4th at pp. 1016-1017.)

## VI.    Slander of Title

The complaint's fourth cause of action is for slander of title. Silkes alleges defendants' recording of a notice of default and statements that he is in default on the note were a slander of his title to the property. The elements of a slander of title cause of action are "(1) a publication, which is (2) without privilege or justification, (3) false, and (4) causes pecuniary loss." (*La Jolla Group II v. Bruce* (2012) 211 Cal.App.4th 461, 472, italics omitted.)

While the complaint may have sufficiently alleged publication and falsity, it fails to sufficiently allege the recording of the notice of default was not privileged or caused pecuniary loss. Civil Code section 2924 "deems the statutorily required mailing, publication, and delivery of notices in nonjudicial foreclosure, and the performance of statutory nonjudicial foreclosure procedures, to be privileged communications under the qualified common-interest privilege of Civil Code section 47, subdivision (c)(1)." (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 325 (*Kachlon*).) Although the privilege doctrine does not apply if the plaintiff shows the defendants acted with malice (*id.* at pp. 341, 343), the complaint in this case fails to sufficiently allege malice.

Malice means " ' "the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." ' [Citations.]" (*Kachlon*, at p. 336.) The complaint here alleges only that defendants "knew or should have known" they were responsible for Silkes's failure to make payments on the loan because they demanded an unjustified escrow amount. Indeed, the complaint does not actually allege defendants knew the publication—the

20

notice of default—was false, or that they lacked reasonable ground for belief in the truth of the notice of default. Mere allegations that the statements were "maliciously published" fail to meet the pleading requirements for malice. (*Boyich v. Howell* (1963) 221 Cal.App.2d 801, 803.)

Moreover, the complaint also fails to allege any pecuniary harm and states only that Silkes has been "damaged in an amount to be proved at time of trial." (*M.F. Farming Co. v. Couch Distributing Co.* (2012) 207 Cal.App.4th 180, 200 [slander of title claim requires evidence of proximately-caused pecuniary loss, such as impaired value or marketability, or expense of legal proceedings to remove cloud on title].) This is insufficient.

Silkes does not establish he can amend his complaint to state a viable claim. Instead he merely quotes the language in the existing complaint. The trial court did not abuse its discretion in sustaining the demurrer to the slander of title claim without leave to amend.

## VII. Intentional Interference with Contractual Relations

The demurrer was properly sustained to the fifth cause of action for intentional interference with contractual relations. " 'The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.' [Citation.]" (*Quelimane Co. v. Stewart Title Guaranty Co., supra,* 19 Cal.4th at p. 55.)

The complaint alleges Silkes and his wife entered into a contract with Bank of America, whose attorney-in-fact is Select Portfolio. It further alleges "defendants" knew of the loan agreement, intended to disrupt the full term of the agreement, and "prevented Plaintiff from benefitting from the loan modification agreement by using a position of power, trust and knowledge to inflate the monthly payment beyond reason." However, the complaint alleges no facts identifying conduct by one or more defendants which, if

21

true, would constitute intentional acts designed to induce a breach or disruption of the contractual relationship with the other defendant or defendants. The complaint does not, for example, allege any facts suggesting the actions of any of the other defendants besides Bank of America—Select Portfolio, Wells Fargo, Countrywide, or HarborView—played any role in the unwarranted inflation of the escrow payment. (*Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594, 1603-1604 [only a stranger to a contract may be liable for interfering with it; corporate agents acting on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract].)

Although Silkes argues on appeal that when the deed of trust was transferred to Wells Fargo, "the new holders prevented [him] from benefitting from the loan modification agreement by demanding an inflated monthly payment in violation of the loan modification agreement," this assertion summarizes merely a continuation of Bank of America's previous breach, not an intentional act intended to induce a breach by a stranger to the contract. The complaint simply contains no allegations that, if true, would state a claim that any of the defendants acted to induce a breach of the loan modification agreement with Bank of America. Silkes further fails to show there is a reasonable probability the defects in this cause of action can be cured by amendment.

**VIII.  Conversion**

The sixth cause of action is for conversion against all defendants. "The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." (*Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1066.) The complaint alleges defendants interfered with Silkes's ownership of his home by demanding a greater monthly payment than that bargained for in the loan modification agreement, and they "exercised dominion and control" of his home by instituting a non-judicial foreclosure sale.

The complaint fails to allege any facts that would state a claim for conversion. "The tort of conversion applies to personal property, not real property." (*Salma v. Capon*

22

(2008) 161 Cal.App.4th 1275, 1295; *Munger v. Moore* (1970) 11 Cal.App.3d 1, 7.) To the extent the complaint's conversion claim concerned personal property, the complaint fails to allege any facts identifying the property, or defendants' actions that have converted that property. At most, Silkes argues only that the demand for an inflated escrow payment was an "attempt" at conversion. This is insufficient. Silkes fails to articulate how the complaint could be amended to state a viable conversion claim.

## IX. Quiet Title and Action to Remove Cloud on Title

The complaint's eighth and ninth causes of action are for quiet title and to remove cloud on title. [10] In the quiet title claim, the complaint alleges HarborView claims an adverse interest in Silkes's title. The complaint seeks a determination that as of the date of the filing of the complaint, HarborView has no interest in the title to the condominium. In the action to remove cloud on title, the complaint alleges the defendants are attempting to take title to Silkes's home "via a certain 'Corporate Assignment of Deed of Trust . . . .'" The complaint further alleges the note was not transferred with the deed of trust, and Bank of America had no authority to assign the deed of trust to Wells Fargo because there is "no link in the chain of title between Central Pacific Mortgage Company and Defendant Countrywide Home Loans."

On appeal, Silkes contends the gravamen of these claims is that "the current entity asserting title to the promissory note and deed of trust on the subject property technically has no beneficial ownership in the loan and is therefore without authority to collect any monies due on the loan because, *inter alia*, the promissory note was not transferred to them." However, several courts have concluded borrowers may not maintain preemptive suits intended to require foreclosing entities to establish their authority to foreclose. (*Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511-513; *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155-1157.) As Silkes

---

[10] Silkes does not argue on appeal that the trial court erred in sustaining the demurrer to the promissory estoppel claim, his seventh cause of action. " ' "Issues not raised in an appellant's brief are deemed waived or abandoned. [Citation.]" ' " (*Pfeifer, supra,* 211 Cal.App.4th at p. 1282.)

has described the claims on appeal, the quiet title and action to remove cloud on title claims appear to be just this kind of preemptive action. Courts have also rejected the argument that a party must have a beneficial interest in or physical possession of the promissory note to validly initiate foreclosure proceedings. (See e.g., *Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 511-512; *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440.)

The defendants' alleged lack of authority to assert an interest in his property, based on the failure to transfer the promissory note, is the *only* theory Silkes has advanced on appeal in connection with the quiet title and action to remove cloud on title claims. (*Pfeifer, supra,* 211 Cal.App.4th at p. 1282 [appellate court will not develop the appellants' arguments for them].) The trial court properly sustained the demurrer to the quiet title and action to remove cloud on title claims, and did not abuse its discretion in denying leave to amend.

## X.    Entry of Default

Finally, Silkes contends his request for entry of default should have been granted because defendants did not timely respond to the second amended complaint. We find no basis for reversal.

After the trial court sustained the second demurrer with leave to amend, Silkes filed a second amended complaint on June 10, 2013. On July 10, Silkes filed a request for entry of default. On July 15, the superior court clerk's office returned the request for entry of default to Silkes, noting the defendants had filed a demurrer and the court's records did not include a proof of service of the second amended complaint. On August 19, Silkes filed a motion to strike the demurrer and for entry of default. Among other things, Silkes argued the demurrer was untimely and the court was required to enter a default pursuant to Code of Civil Procedure section 585, subdivision (b).

The trial court subsequently denied the motion to strike. The court concluded defendants' response to the second amended complaint was due on July 15. Although the demurrer was not filed until July 16, the court concluded the late filing was due to excusable neglect. The court thus declined to strike the demurrer.

24

On appeal, Silkes challenges only the *clerk's* failure to enter a default; he does not contend the trial court erred in denying his motion to strike the demurrer as untimely. Even were the clerk's action reviewable on appeal, we would find any challenge to that action moot given the trial court's subsequent ruling on the same issue. As Silkes fails to challenge the trial court ruling denying his motion for entry of default and to strike the demurrer, he has forfeited the argument.

## DISPOSITION

The judgment is reversed as to the claim for breach of the implied covenant of good faith and fair dealing against defendants Bank of America, Wells Fargo, and HarborView; and as to the order sustaining the demurrer to the wrongful foreclosure claim without leave to amend. In all other respects, the judgment is affirmed. Silkes is to be given leave to amend on remand consistent with this opinion. The parties shall bear their own costs on appeal.


                                                        BIGELOW, P.J.

We concur:


            FLIER, J.



            MANELLA, J. *


_____

\* Associate Justice of the Court of Appeal, Second Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.