Filed 4/2/15  Zavieh v. Super. Ct. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MEGAN E. ZAVIEH,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>        Respondent;<br><br>RWW PROPERTIES, LLC,<br><br>        Real Party in Interest. | A142768<br><br>(Alameda County<br>Super. Ct. No. HG12-615549) |

Megan E. Zavieh seeks writ review of an order of the superior court granting the motion of real party in interest, RWW Properties, LLC (RWW), to expunge a notice of pending action Zavieh recorded regarding the property at issue in this litigation.  (Code Civ. Proc., § 405.39 [order expunging notice of pending action may be reviewed only by writ of mandate].)**[1]**  We conclude the superior court erred in granting expungement and accordingly order issuance of a writ of mandate.

---

**[1]** All undesignated statutory references are to the Code of Civil Procedure.

1

FACTUAL AND PROCEDURAL BACKGROUND

An understanding of the legal issues presented in this writ proceeding requires us to recount the events leading up to the foreclosure sale that gave rise to the action below. We summarize them before reaching the procedural history of the case.[2]

*Zavieh's Mortgage, Assignment to JP Morgan Chase, Attempted Modification.*

In March 2000, Zavieh acquired property located at 39827 San Moreno Court, Fremont, Alameda County, California 94539 (the "Property") by gift from her father, James J. Murray. In late 2007, Zavieh obtained a mortgage on the Property from Washington Mutual Bank. The deed of trust named California Reconveyance Company (CalRecon) as trustee.

On October 10, 2008, JP Morgan Chase Bank (Chase) sent Zavieh a letter informing her Chase had acquired certain assets of Washington Mutual, including the right to service and collect payments on Zavieh's loan.

In June 2009, Zavieh applied to Chase for a loan modification. After this, Zavieh and Chase exchanged correspondence regarding the necessary documentation. On

---

[2] We draw the facts from the exhibits submitted in support of the petition. RWW seeks to expand the record and has attached five exhibits to its return. Although the return lists six exhibits (A through F), no exhibit A has been attached. Zavieh objects to all the exhibits as improper attempts to supplement the record. Exhibits C and D are declarations signed in January 2015, and thus clearly were not before the trial court. We sustain Zavieh's objection to the declarations and will not consider them. (See *Stanley v. Superior Court* (2012) 206 Cal.App.4th 265, 278, fn. 21 ["the only declarations relevant to the disposition of this writ are those which were before the trial court when it ruled on defendant's motion . . ."].) Exhibit E is a brief filed in an unrelated case, and Exhibit F is an opinion of the State Bar Court in a disciplinary proceeding. RWW asks us to take judicial notice of these exhibits, but we decline. RWW did not file a motion seeking judicial notice as required by the rules. (Cal. Rules of Court, rule 8.252(a)(1) ["To obtain judicial notice by a reviewing court under Evidence Code section 459, a party *must serve and file a separate motion* with a proposed order"], italics added.) Moreover, RWW has failed to show how these materials are relevant to the matter before us. (See Ct. App., First Dist., Local Rules of Ct., rule 9(a), Judicial Notice Requests.)
Exhibit B is a declaration that appears to have been filed in the court below and is thus proper for inclusion in the record of this writ proceeding. (Cal. Rules of Court, rule 8.487(c).) As will become clear, however, this document has no effect on our disposition of this case.

October 20, 2009, Zavieh sent Chase additional documentation the bank had requested, including a Home Affordable Modification Program (HAMP) hardship affidavit. In that same month, Zavieh began to fall behind in her payments to Chase.

In December 2009, Chase sent Zavieh a letter explaining that her "home loan may be eligible for a loan modification program . . . ." A similar letter followed in January 2010. On January 27, Chase sent Zavieh a letter offering her the chance to participate in a "Trial Period Plan" (TPP). The letter explained the TPP would not bring her account current but would lower the monthly payments due. Instead of paying $2,674 per month, Zavieh would pay $1,292. Payments in the latter amount were due March 1, April 1, and May 1, 2010.

In between February and September 2010, seven payments of $1,292 were made each month to Chase, either by Murray or Zavieh. A further payment was made on January 8, 2011.[3] Between May and November 2010, Zavieh and Chase corresponded regarding the documentation necessary to process her loan modification request.

Chase wrote to Zavieh on November 16, 2010, to inform her the owner of her loan had not approved the requested modification. Chase's letter stated the owner had based its refusal to approve the modification on the net present value calculation, which estimated the cash flow to the owner of the modified and unmodified loan. Chase therefore told Zavieh it was not able to offer her a permanent loan modification either through HAMP or any Chase modification program. About one month later, on December 20, 2010, Chase wrote to Zavieh informing her that her modification request had been denied for a different reason. The second letter stated that Zavieh was either current on her loan or had only one payment due and unpaid in the month in which it was due. The letter also stated Zavieh was not at risk of default because she had significant equity in the Property and should be able to refinance her loan.

---

[3] In the court below, Zavieh claimed Chase refused to accept her payment for October 2010 and informed her no further payments would be accepted because she was in foreclosure.

Although Zavieh and Chase had exchanged a number of letters in 2010 regarding her loan, in January 2011, Chase wrote to Zavieh expressing concern that it had not heard from her and informing her she had a past-due balance of $31,778.

*The Foreclosure Sale*

Chase recorded a notice of default (NOD) on June 14, 2011.  The NOD stated Zavieh was in default in the amount of $49,006. 68.  It also stated Zavieh had failed to pay the principal and interest installments from March 2010 and thereafter.

In late 2011, a notice of trustee's sale (NOS) was posted at the Property.[4] CalRecon conducted a nonjudicial foreclosure sale on December 20, 2011, at which RWW was the highest bidder.  Murray, who claimed to be acting as Zavieh's agent, appeared at the sale and announced the sale was being held improperly because of lack of a timely NOS and other irregularities.  A trustee's deed was issued in favor of RWW and recorded in the Office of the Recorder for Alameda County (the "Trustee's Deed").  The Trustee's Deed stated:  "All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of a Sale have been complied with."

*Zavieh's Action*

On February 2, 2012, Zavieh initiated the action below by filing a complaint to quiet title and for declaratory relief, naming Chase, CalRecon, and RWW as defendants. That same day, Zavieh filed a notice of pendency of action in Alameda County Superior

---

[4] The parties dispute when the NOS was actually posted on the Property.  Zavieh claims it was not posted until December 6, 2011.  Her claim is based on a declaration filed by Murray, who stated he was a tenant in the Property on that date and was physically present on the day the NOS was posted.

RWW has attached to its return a declaration filed below by an agent for a company responsible for posting notices of trustees sales on properties in foreclosure. (See Cal. Rules of Court, rule 8.487(c).)  The agent declared he posted the notice on the Property on November 29, 2011.  The agent attached to the declaration a certificate of posting dated November 29, 2011, as well as photographs of the Property allegedly showing the NOS posted there.  RWW also notes that the NOS was recorded on November 28, 2011.

Court. Five days later, the notice was recorded in the official records of Alameda County.

Zavieh filed her operative fourth amended complaint on or about August 29, 2013. The complaint's first cause of action, against defendants Chase and CalRecon, was for wrongful foreclosure, and the fifth cause of action, against RWW, was for quiet title. The prayer for relief for the first and fifth causes of action requested rescission of the trustee's sale and restoration of title to Zavieh.

*RWW's Unlawful Detainer Action Against Murray*

On April 18, 2013, RWW filed an unlawful detainer action against Murray to obtain possession of the Property. The unlawful detainer case (Alameda County Superior Court case No. RG13-676304) was tried before Judge Victoria S. Kolakowski on July 29, 2013. A "key question" at the unlawful detainer trial was whether RWW was a bona fide purchaser without notice of alleged defects in the foreclosure process. Murray testified in the unlawful detainer trial about his appearance at the foreclosure sale and his announcement of alleged irregularities in the notices preceding it.

At Murray's request, Judge Kolakowski provided a statement of decision on a number of factual questions "to the extent that the facts were addressed to reach the judgment." In an amended statement of decision filed November 8, 2013, the court ruled RWW was a bona fide purchaser for value of the Property. It further ruled Murray's announcement did not provide sufficient information to allow an uninformed third party to conclude there was a serious legal impediment to the sale. It therefore concluded RWW was a bona fide purchaser without notice within the meaning of Civil Code section 2924, subdivision (c).[5]

_____

[5] Civil Code section 2924, subdivision (c) provides: "A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice."

5

Murray appealed the unlawful detainer judgment, but Division One of this court dismissed his appeal (case No. A140794) on February 24, 2014, for failure to procure the record within the time allowed. (See Cal. Rules of Court, rule 8.140(b)(1).) The remittitur in that case issued on April 29, 2014, and the unlawful detainer judgment is now final. RWW obtained possession of the Property on January 29, 2014.

*The Motion to Expunge*

On May 19, 2014, RWW filed a motion to expunge the lis pendens from the county record and for attorney fees. The motion was set for hearing before Judge Delbert C. Gee.

In its motion, RWW argued the notice should be expunged for two reasons. First, it contended the complaint did not affect either title to or possession of the Property. RWW argued it was a bona fide purchaser without notice within the meaning of Civil Code section 2924, subdivision (c) and was thus entitled to a conclusive presumption that all procedural requirements for the notices of default and sale had been satisfied. RWW asserted that the judgment obtained against Murray in the unlawful detainer action collaterally estopped Zavieh from attacking the validity of the title it had obtained at the nonjudicial foreclosure sale. According to RWW, Zavieh was in privity with Murray, who acted as her agent, and she was thus bound by the judgment.

RWW's second argument was that the true goal of Zavieh's complaint was recovery of damages. It contended lis pendens was inappropriate where money damages would be sufficient to satisfy a plaintiff.

Zavieh opposed the motion on several grounds. She contended Chase had no authority to conduct the trustee's sale, because it had: (1) violated its obligation to finalize her loan modification, (2) failed to provide the legally required notice of the sale to her, (3) recorded an invalid NOD, and (4) failed to acquire the right to conduct the trustee's sale from Washington Mutual. Zavieh also disputed RWW's contention that she was collaterally estopped from challenging its status as a bona fide purchaser without notice by the unlawful detainer judgment against Murray.

6

RWW's reply did not respond to most of Zavieh's arguments and was devoted almost exclusively to the issue of collateral estoppel. RWW's reply argued for the first time that even if there were facts supporting Zavieh's claim to set aside the foreclosure sale, the claim must fail because of Zavieh had not tendered performance on the underlying default.

*The Trial Court's Ruling and the Petition for Writ of Mandate*

After announcing a tentative ruling, Judge Gee heard RWW's motion to expunge on July 25, 2014. After considering the parties' arguments, Judge Gee confirmed his tentative ruling and granted the motion. The order expunging the lis pendens and granting RWW attorney fees was entered on July 30, 2014.

On August 19, 2014, Zavieh filed a petition for writ of mandate in this court. (§ 405.39.) After receiving an informal opposition from RWW and a reply from Zavieh, on December 2, 2014, we issued an order to show cause directing the parties to brief a number of issues. Briefing was completed on February 10, 2015, and the parties waived oral argument.

DISCUSSION

The sole issue presented for our decision is whether the trial court properly granted RWW's motion to expunge. We conclude it erred for two reasons. First, it incorrectly ruled Zavieh's first cause of action for wrongful foreclosure did not contain a real property claim. It committed a further error in holding the collateral estoppel effect of the unlawful detainer judgment meant Zavieh had failed to establish the probable validity of her quiet title claim. These errors are sufficient to require us to order issuance of a writ of mandate. Accordingly, we do not reach the parties' other arguments.

I. *Governing Law and Standard of Review*

When a party files an action affecting title to real property, it may file a notice of pendency of the action (also called a lis pendens) in the office of the county recorder. (§ 405.20; *Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 647 (*Kirkeby*) [" 'A lis pendens is a recorded document giving constructive notice that an action has been filed affecting title or right to possession of the real property described in the notice.' "].)

7

After the notice is recorded, any party to the action may move to have it expunged. (§ 405.30.)

The court shall order the notice expunged if it finds the pleading on which the notice is based does not contain a real property claim. (§ 405.31.) In addition, "the court shall order that the notice be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim." (§ 405.32.) A " 'real property claim' " is defined to mean "the cause or causes of action in a pleading which would, if meritorious, affect . . . title to, or the right to possession of, specific real property . . . ." (§ 405.4.) A claim has probable validity if "it is more likely than not that the claimant will obtain a judgment against the defendant on the claim." (§ 405.3.) The burden of proof on both issues (i.e., the existence of a real property claim and the probable validity of the claim) is on the lis pendens claimant, in this case, Zavieh. (§§ 405.1, 405.30; *Howard S. Wright Construction Co. v. Superior Court* (2003) 106 Cal.App.4th 314, 319 (*Howard S. Wright*) ["Unlike other motions, the burden is on the party opposing the motion to expunge—i.e., the claimant-plaintiff—to establish the probable validity of the underlying claim."], fn. omitted.)

An order expunging a notice of lis pendens is reviewable only by petition for writ of mandate. (§ 405.39.) If the motion to expunge is brought under section 405.31 because the pleading on which the notice is based allegedly lacks a real property claim, the trial court "must engage in a demurrer-like analysis. 'Rather than analyzing whether the pleading states any claim at all, as on a general demurrer, the court must undertake the more limited analysis of whether the pleading states a real property claim.' " (*Kirkeby, supra,* 33 Cal.4th at pp. 647-648.) Our review of any resulting expungement order is limited to determining "whether a real property claim has been properly pled by the claimant." (*Id*. at p. 648.)

If the moving party argues the claimant has failed to establish the probable validity of a real property claim under section 405.32, the "the plaintiff must 'at least establish a prima facie case. If the defendant makes an appearance, the court must then consider the relative merits of the positions of the respective parties and make a determination of the

8

probable outcome of the litigation.' " (*Howard S. Wright, supra,* 106 Cal.App.4th at p. 319.) "On review of the trial court's ruling, the appellate court does not reweigh conflicting evidence or determine the credibility of witnesses. The reviewing court's task is simply to ensure that the trial court's factual determinations are supported by substantial evidence. . . . If, however, the material facts are not disputed, then the issue becomes a question of law for our de novo review. [Citations.]" (*Id.* at p. 320.)

II.     *Zavieh's First Cause of Action for Wrongful Foreclosure Pleads a Real Property Claim.*

Addressing Zavieh's first cause of action for wrongful foreclosure, the trial court ruled it did not contain a real property claim. (§ 405.31.) The court's tentative ruling stated: "(The Court does not agree with Plaintiff that the First Cause of Action for Wrongful Foreclosure would affect title to or right to possession of the subject property. That cause of action indicates that it is directed against Chase and Cal[R]econ only, neither of whom own or have ever owned the subject property. Therefore, even if Plaintiff were successful on the First Cause of Action, she would only be entitled to monetary damages against the named Defendants Chase and Cal[R]econ.)" The trial court does not appear to have specifically considered the effect of Zavieh's request for rescission of the trustee's sale, and since it concluded the first cause of action did not contain a real property claim, the court did not undertake any analysis of the probable validity of the first cause of action. We conclude the first cause of action contains a real property claim. (§ 405.4.)

A.     *Wrongful Foreclosure*

"To obtain the equitable set-aside of a trustee's sale or maintain a wrongful foreclosure claim, a plaintiff must allege that (1) the defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) the plaintiff suffered prejudice or harm; and (3) the plaintiff tendered the amount of the secured indebtedness or were excused from tendering. [Citation.] Recognized exceptions to the tender rule include when (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim

9

offsets the amount due, [or] (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale[.]" (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062 (*Chavez*).)

Here, as in *Chavez,* Zavieh's complaint alleged the existence of an enforceable agreement to modify her loan and the payment of the amount due under that agreement until Chase allegedly breached by failing to accept her payments. (*Chavez, supra,* 219 Cal.App.4th at p. 1063.) She alleged breach of that agreement had prejudiced her. She also alleged an exception to the tender rule because Chase and CalRecon lacked a contractual basis to exercise the power of sale because her loan had been modified under HAMP. (*Ibid*.) She thus appears to have stated a claim for wrongful foreclosure.

B.    *Rescission of the Trustee's Deed Would Affect Title to the Property.*

The trial court's ruling focused not on whether Zavieh had stated the claim, but instead on the issue of remedy. It concluded success on the wrongful foreclosure cause of action would entitle her only to damages. But her prayer for relief on that cause of action seeks rescission of the trustee's sale and restoration of title to her. She argues that if she prevails on this claim at trial, Civil Code section 1058.5, subdivision (b)[6] would empower the court to grant the requested relief by ordering CalRecon to record a notice of rescission of the trustee's deed. Under Zavieh's reading of the statute, record title will then be restored to the status quo prior to recordation of the trustee's deed.

RWW makes absolutely no response to this argument. In fact, despite the obvious importance of the statute to Zavieh's contentions in this court, neither RWW's informal

---

[6] Civil Code section 1058.5, subdivision (b) provides: "*Where a trustee's deed is invalidated* by a pending bankruptcy *or otherwise, recordation of a notice of rescission of the trustee's deed,* which notice properly identifies the deed of trust, the identification numbers used by the recorder or the books and pages at which the trustee's deed and deed of trust are recorded, the names of all trustors and beneficiaries, the location of the property subject to the deed of trust, and the reason for rescission, *shall restore the condition of record title to the real property described in the trustee's deed* and the existence and priority of all lienholders *to the status quo prior to the recordation of the trustee's deed upon sale*. Only the trustee or beneficiary who caused the trustee's deed to be recorded, or his or her successor in interest, may record a notice of rescission." (Italics added.)

10

opposition nor its return mentions Civil Code section 1058.5.  While we express no definitive view on the proper scope or application of this provision, its text suggests it would allow the trial court to order CalRecon, the trustee named in the trustee's deed, to record a notice of rescission that would result in return of title to Zavieh.  Since RWW does not argue otherwise, we conclude it has conceded the point.[7]  (See, e.g., *People v. Werner* (2012) 207 Cal.App.4th 1195, 1212 [respondent's failure to respond to appellant's argument treated as concession].)

We therefore ask only whether Zavieh has pled facts that would entitle her to the remedy she seeks.  (See *Campbell v. Superior Court* (2005) 132 Cal.App.4th 904, 922.) In her cause of action for wrongful foreclosure, Zavieh asserts Chase and CalRecon conducted the trustee's sale in a manner that violated her statutory and contractual rights. Although most of this cause of action concerns alleged defects in the NOD and NOS, Zavieh also contended below that Chase failed to complete a HAMP modification as required by law.[8]  Zavieh further contended Chase never acquired beneficiary status, which she argued was a prerequisite to commencing the foreclosure process.  If the remedy of rescission is available, then Zavieh's wrongful foreclosure claim "would, if meritorious, affect . . . title to, or the right to possession of, specific real property . . . ." (§ 405.4.)  Moreover, damages would not be an adequate remedy here.  (*Campbell v. Superior Court, supra,* at p. 918 [ "where a party seeks title to property, or some other

---

[7] Zavieh argued below that rescission of the sale was the proper remedy if she succeeded on her wrongful foreclosure and quiet title claims, but she did not cite this specific statute in the trial court.  Nevertheless, because section 405.31 requires the court to engage in a demurrer-like analysis (*Kirkeby, supra,* 33 Cal.4th at pp. 647-648), we do not believe Zavieh should be precluded from raising new statutory authority in this court.  (See *Grinzi v. San Diego Hospice Corp.* (2004) 120 Cal.App.4th 72, 84-85 [party challenging judgment of dismissal after demurrer is sustained may raise statutory provision for first time on appeal].)

[8] In its return, RWW makes a number of arguments about why Zavieh either failed to qualify for the loan modification or failed to perform her part of the alleged bargain. RWW made none of these *factual* arguments below, and it may not make them for the first time in this court.  (*People ex rel. Dept. of Transportation v. Superior Court* (2003) 105 Cal.App.4th 39, 46 (hereafter *Isenhower*) [argument not made in trial court not properly cognizable in appellate court in writ of mandate proceeding].)

interest dependent upon the uniqueness of a particular parcel of property, the party cannot ordinarily be made whole by money alone"].)  We therefore conclude the trial court erred in ruling the first cause of action did not contain a real property claim.  (See § 405.31.)

The trial court did not address the probable validity of this claim, and we will not do so in the first instance because it would necessarily entail an examination of the facts and evidence.  (See Code com., 14A West's Ann. Code Civ. Proc. (2004 ed.) foll. § 405.32, p. 346.)  It is sufficient for us to hold the trial court erred in ruling Zavieh's cause of action for wrongful foreclosure did not contain a real property claim.

III.    *The Judgment in the Unlawful Detainer Action Does Not Preclude All of Zavieh's Claims in this Action.*

The trial court found Zavieh's fifth cause of action for quiet title stated a real property claim but concluded she had failed to establish the probable validity of that claim.  (§ 405.32.)  It held Zavieh was collaterally estopped by the judgment in the unlawful detainer action against Murray, a judgment that had determined RWW was a bona fide purchaser without notice entitled to a conclusive presumption that the trustee's sale had been regularly conducted.  (See Civ. Code, § 2924, subd. (c).)  According to the trial court:  "Collateral estoppel applies because (1) the issue presented in the unlawful detainer action, i.e., was RWW a bona fide purchaser for value of the subject property pursuant to Civil Code []§ 2924(c), is the same issue presented here; (2) there was a final judgment on the merits in the unlawful detainer proceeding; and (3) Plaintiff Megan Zavieh is in privity with James Murray, the defendant in the unlawful detainer action."

The elements of collateral estoppel are well established.  "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.  [Citations.]  The party asserting collateral estoppel bears the burden of

12

establishing these requirements.' " (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943.)

The parties devote much of their briefing to debating whether the final element of collateral estoppel is present here, i.e., whether Zavieh and Murray were in privity. We need not resolve that issue, however, because we conclude RWW failed to establish the first element. Zavieh argues, and we agree, that the issues in the two proceedings are not identical. For even if we assume the unlawful detainer judgment is binding on Zavieh—a question we do not decide—that judgment would bar only some, but not all, of the claims she asserts in this action.

A judgment in an unlawful detainer action generally has very limited preclusive effect and will not prevent a party dispossessed of property from bringing a subsequent action to resolve issues of title. (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 255 (*Vella*).) An exception to this rule is contained in section 1161a, which "provides for a *narrow and sharply focused* examination of title. To establish that he is a proper plaintiff, one who has purchased property at a trustee's sale and seeks to evict the occupant in possession must show that he acquired the property at a regularly conducted sale and thereafter 'duly perfected' his title."[9] (*Ibid.*, italics added.) Thus, in an unlawful detainer action brought under section 1161a, the court necessarily must decide whether the purchaser at the trustee's sale acquired legal title to the property at issue in accordance with Civil Code section 2924. (*Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, 974.) The resulting unlawful detainer judgment is therefore a determination that the foreclosure sale was conducted in accordance with Civil Code section 2924. (*Ibid.*)

---

[9] Section 1161a, subdivision (b) provides in relevant part: "In any of the following cases, a person who holds over and continues in possession of . . . real property after a three-day written notice to quit the property has been served upon the person, . . . may be removed therefrom as prescribed in this chapter: [¶] . . . [¶] . . . [¶] (3) Where the property has been sold in accordance with Section 2924 of the Civil Code, under a power of sale contained in a deed of trust executed by such person, or a person under whom such person claims, and the title under the sale has been duly perfected."

13

Consequently, a judgment in an unlawful detainer action will preclude "subsequent fraud or quiet title suits founded upon allegations of irregularity in a trustee's sale[.]" (*Vella, supra,* 20 Cal.3d at p. 256.)  The judgment will not, however, bar subsequent claims not directly connected to the conduct of the trustee's sale.  (*Ibid*.)  This is because Civil Code section 2924 does no more than "establish presumptions about the adequacy of *notices* related to a foreclosure sale[.]" (*Bank of America v. La Jolla Group II* (2005) 129 Cal.App.4th 706, 713.)  The presumption created by Civil Code section 2924 does not preclude actions alleging other defects in the foreclosure process. (See *id.* at p. 714.)  For example, "[n]o statute creates a presumption—conclusive or otherwise—for any purchaser—bona fide or otherwise—that any recitals in a trustee's deed render effective a sale that had no contractual basis." (*Ibid*.)  "The [Civil Code] section 2924 presumptions pertain only to notice requirements, not to every defect or inadequacy short of fraud." (*Ibid*.)

While Zavieh certainly alleges Chase and CalRecon failed to respect the statutory notice requirements applicable to the trustee's sale, that is not her only claim.  For example, in addition to the notice defects, her complaint asserts Chase had no power of sale because it breached the alleged HAMP modification agreement and violated regulations applicable to HAMP.  She claims the breach and violation of the regulations rendered subsequent "foreclosure actions" improper.  Breach of such a modification agreement, if established, would render the trustee's sale void because Chase would have lacked a contractual basis to exercise the power of sale. (*Chavez, supra,* 219 Cal.App.4th at p. 1063.)  Such a claim is "a challenge not to the statutory proceeding but to something outside of it." (*Plastino v. Wells Fargo Bank* (N.D. Cal. 2012) 873 F.Supp.2d 1179, 1190.)  It therefore falls outside the scope of the unlawful detainer judgment.

Simply put, this action involves issues not presented in the unlawful detainer proceeding.  Thus, even if the unlawful detainer judgment binds Zavieh, it does not preclude her causes of action in their entirety. (See *George v. California Unemployment Ins. Appeals Bd.* (2009) 179 Cal.App.4th 1475, 1488 [state personnel board findings precluded relitigation of some issues related to plaintiff's retaliation claim, but did not

14

entirely bar cause of action].) The trial court applied collateral estoppel too broadly to defeat all claims in the fifth cause of action.[10] And since RWW argued *only* the issue of collateral estoppel and did not contradict Zavieh's arguments on the claims falling outside the scope of the unlawful detainer judgment, it has forfeited any challenge to her showing of probable validity on those claims. (See *Isenhower, supra,* 105 Cal.App.4th at p. 46.)

The trial court also held that even if Zavieh were not collaterally estopped from challenging RWW's status as a bona fide purchaser without notice, her claims would fail because she had not submitted any admissible evidence that she was willing and able to tender the full amount of the secured debt. But tender is not required where the foreclosure sale is void. (*Chavez, supra,* 219 Cal.App.4th at p. 1062.) Zavieh alleged she had a binding modification agreement with Chase and had performed under that agreement until Chase repudiated it. This allegation adequately pleads the sale is void, so as to excuse tender. (*Barroso v. Ocwen Loan Servicing, LLC* (2012) 208 Cal.App.4th 1001, 1017 [where borrower alleged she had enforceable modification agreement and had made all payments when due, no tender necessary because there was no default under terms of modification agreement].) RWW presented nothing to contradict either Zavieh's allegations or evidence on this point.

Moreover, contrary to the trial court's view, Zavieh *did* present evidence beyond her complaint that she was willing and able to tender the amount of the secured debt. Her declaration expressly adopted the allegations of her complaint, in which she alleges she had retirement assets in excess of the amount of the arrearages claimed in the NOD. Documents submitted below supported that claim. In light of this evidence, the trial court's finding on this issue is not supported by substantial evidence. (*Howard S. Wright, supra,* 106 Cal.App.4th at p. 320.)

---

[10] Zavieh's fourth amended complaint sought to enjoin the unlawful detainer proceedings. Coordination of the unlawful detainer proceedings with the underlying action here would have avoided any potential inconsistency in the judgments in the two cases. (See *Asuncion v. Superior Court* (1980) 108 Cal.App.3d 141, 146-147.)

IV.  *Conclusion*

For the reasons set forth above, we hold the trial court erred in granting RWW's motion to expunge the lis pendens.  We emphasize that our holding is limited to that narrow issue.  "We do not mean to suggest how this case should be determined on its merits.  We hold only that as matters now stand it should be heard upon its merits for the reasons we have stated and that the lis pendens was erroneously expunged."  (*Mason v. Superior Court* (1985) 163 Cal.App.3d 989, 999-1000.)

DISPOSITION

Let a peremptory writ of mandate issue commanding respondent superior court to vacate its July 30, 2014 order granting RWW's motion to expunge and awarding attorney fees and to enter a new and different order denying that motion.  This decision shall be final as to this court immediately.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)  Zavieh shall recover her costs in this writ proceeding.  (Cal. Rules of Court, rule 8.493(a)(1)(B).)

16

_____

Jones, P.J.

We concur:


_____

Simons, J.


_____

Bruiniers, J.