Filed 9/19/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ANGELICA CHAVEZ, | D061997 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00105461-CU-OR-CTL) |
| INDYMAC MORTGAGE SERVICES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Lorna Alksne, Judge.  Reversed.

Law Offices of Frank De Santis, Frank De Santis and Valorie E. Ryan for Plaintiff and Appellant.

Kent Qian for National Housing Law Project; Elizabeth Letcher for Housing and Economic Rights Advocates; Law Office of Eric Andrew Mercer and Eric Mercer as Amici Curiae on behalf of Plaintiff and Appellant.

Malcolm Cisneros, William G. Malcolm and Brian S. Thomley for Defendants and Respondents.

In this case, a lender mailed a homeowner a loan modification agreement under the Home Affordable Mortgage Program (HAMP). The homeowner signed, returned and performed under the loan modification agreement. The lender, however, never mailed the homeowner a signed copy of the loan modification agreement. We conclude the homeowner sufficiently alleged equitable estoppel to preclude the lender's reliance on the statute of frauds defense. We also conclude that the homeowner sufficiently alleged a cause of action for wrongful foreclosure. Accordingly, the judgment entered after the court sustained the lender's demurrer without leave to amend is reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

In accordance with the principles governing our review of a ruling sustaining a demurrer, the following factual recitation is taken from the allegations of the third amended complaint filed by Angelica Chavez and from documents cognizable by judicial notice. (Code Civ. Proc., § 430.30, subd. (a); *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)

In 1999, Chavez purchased residential real property located in San Diego, California (the property). In 2006, she refinanced the property which she occupied as the owner. In connection with the refinance, Chavez executed a promissory note, promising to pay SBMC Mortgage the principal amount of $380,000.00, plus interest. The promissory note was secured by a deed of trust encumbering the property. The deed of trust was later assigned to OneWest Bank, F.S.B. and Indymac Mortgage Services (together Defendants).

2

In November 2009, a notice of default and election to sell under deed of trust was executed and recorded. The notice stated that Chavez was in default on the promissory note and that the amount in arrears, as of October 29, 2009, was $10,603.65. In December 2009, Chavez entered into negotiations with Defendants for a loan modification. In January 2010, Defendants offered Chavez a "Home Affordable Modification Trial Period Plan (Step One of Two-Step Documentation Process)" (the Trial Period Plan) under HAMP. (Undesignated year references are to 2010.) The Trial Period Plan required her to make three monthly payments of $1,167.46 in February, March, and April.

The Trial Period Plan stated that "[i]f I am in compliance with this Trial Period Plan . . . then the lender will provide me with a Home Affordable Modification Agreement." Chavez alleged that she fully complied with all the terms of the Trial Period Plan and in May, Defendants mailed her a "Home Affordable Modification Agreement (Step Two of Two-Step Documentation Process)" (the Modification Agreement) which stated, in part, that after she signed and returned two copies of the Modification Agreement to Defendants, Defendants "will send me a signed copy of this Agreement." It further provided that if her material representations, which included her residency in the property, were true in all material respects and if the preconditions to the modification have been met, "the Loan Documents will automatically become modified on 7/1/2010."

3

Chavez timely returned the Modification Agreement in June, fully complied with all the requirements of the Modification Agreement and continued making her payments on time by personal check. She believed that her loan had been permanently modified. In September, Defendants returned her check for the October payment because "the check [was] not certified." The Trial Period Plan and Modification Agreement, however, do not contain such a requirement. On October 15, the property was sold at auction below fair market value. After the sale took place, Chavez learned that her home had been sold at foreclosure even though she had never received a notice of default or notice of trustee sale from Defendants. In November, Chavez was served with an unlawful detainer summons and was forced to move from her residence in February 2011 due to the wrongful foreclosure on her home.

Chavez filed this action alleging breach of the Modification Agreement and wrongful foreclosure. The trial court sustained Defendants' demurrer, without leave to amend, and entered judgment in favor of Defendants. Chavez timely appealed. We granted an application by the National Housing Law Project, Housing and Economic Rights Advocates and Eric Mercer to file an amicus brief.

DISCUSSION

I. *Standard of Review*

We review an order sustaining a demurrer without leave to amend de novo (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318), assuming the truth of all properly pleaded facts as well as facts inferred from the pleadings, and give the complaint a reasonable interpretation by reading it as a whole and its parts in context. (*Palacin v. Allstate Ins.*

4

*Co.* (2004) 119 Cal.App.4th 855, 861.)  However, we give no credit to allegations that merely set forth contentions or legal conclusions.  (*Financial Corp. of America v. Wilburn* (1987) 189 Cal.App.3d 764, 768–769.)  A complaint will be construed "liberally . . . with a view to substantial justice between the parties."  (Code Civ. Proc., § 452.)  If the complaint states any possible legal theory, the trial court's order sustaining the demurrer must be reversed.  (*Palestini v. General Dynamics Corp.* (2002) 99 Cal.App.4th 80, 86.)  Also, "if there is a reasonable possibility the defect in the complaint could be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend."  (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith* (1998) 68 Cal.App.4th 445, 459.)  Whether a plaintiff will be able to prove its allegations is not relevant.  (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496.)

## II.  *Analysis*

A.  Breach of Contract

Chavez alleges that Defendants breached the Modification Agreement by refusing to accept her October payment, erroneously claiming she did not qualify for the Modification Agreement because she did not live at the property, and by foreclosing on the property.  As a result of these breaches, Chavez claims she was forced to move from her home and suffered monetary damages.  Defendants demurred to this claim arguing that the statute of frauds barred enforcement of the contract.  The trial court sustained Defendants' demurrer to this claim without leave to amend on the ground Chavez failed to plead around the statute of frauds.  As explained below, we conclude the trial court erred in sustaining the demurrer because the language of the Trial Period Plan and the

5

Modification Agreement, combined with the facts alleged in the complaint, support a claim that Defendants should be equitably estopped to assert the statute of frauds.

"A contract coming within the statute of frauds is invalid unless it is memorialized by a writing subscribed by the party to be charged or by the party's agent." (*Secrest v. Security Nat. Mortg. Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 552 (*Secrest*).) The signature of the party to be charged "need not be manually affixed, but may in some cases be printed, stamped or typewritten." (*Marks v. Walter G. McCarty Corp.* (1949) 33 Cal.2d 814, 820.) An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds. (Civ. Code, § 1698.) Thus, California courts have held that forbearance agreements altering a mortgage are covered by the statute of frauds. (*Secrest*, *supra*, at p. 552.)

Courts, however, "have the power to apply equitable principles to prevent a party from using the statute of frauds where such use would constitute fraud." (*Juran v. Epstein* (1994) 23 Cal.App.4th 882, 895.) "Without the qualifying doctrine of estoppel in a proper case the statute would encourage rather than prevent the perpetration of frauds." (*Wilk v. Vencill* (1947) 30 Cal.2d 104, 108.) Accordingly, equitable estoppel may preclude the use of a statute of frauds defense. (*Byrne v. Laura* (1997) 52 Cal.App.4th 1054, 1068 (*Byrne*).) " 'The doctrine of estoppel has been applied where an unconscionable injury would result from denying enforcement after one party has been induced to make a serious change of position in reliance on the contract or where unjust enrichment would result if a party who has received the benefits of the other's performance were allowed to invoke the statute.' " (*Redke v. Silvertrust* (1971) 6 Cal.3d

6

94, 101.) Generally, "four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305.) Whether a party is precluded from using the statute of frauds defense in a given case is generally a question of fact. (*Byrne*, *supra*, at p. 1068.)

Our analysis begins with review of the Trial Period Plan and the Modification Agreement. As a general matter, contracts must be interpreted to make them "lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643.) Additionally, courts " ' "must avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable." ' " (*Barroso v. Ocwen Loan Servicing, LLC* (2012) 208 Cal.App.4th 1001, 1012-1013.)

The Trial Period Plan stated that: "If [the borrower is] in compliance with this Trial Period Plan (the 'Plan') and [her] representations in Section 1 continue to be true in all material respects, then the Lender *will provide* [the borrower] with a Home Affordable Modification Agreement ('Modification Agreement'), as set forth in Section 3." (Italics added.) The introductory paragraph of the Trial Period Plan set forth the understanding of the parties that "after [the borrower] sign[s] and return[s] two copies of this Plan to the Lender, the Lender *will send me a signed copy of this Plan if I qualify for the Offer or*

7

*will send me written notice that I do not qualify for the Offer.* This Plan will not take effect unless and until both the Lender and I sign it and the Lender provides me with a copy of this Plan with the Lender's signature." (Italics added.)

The Trial Period Plan further explained at paragraph 3 that "[i]f (1) [the borrower's] representations in Section 1 were and continue to be true in all material respects; (2) [the borrower] compl[ies] with the requirements in Section 2; (3) [the borrower] provide[s] the Lender with all required information and documentation; and (4) the Lender determines that I qualify, the Lender *will send* [her] a Modification Agreement for [her] signature which *will modify* [her] Loan Documents as necessary to reflect this new payment amount." (Italics added.)

As a threshold matter, we note that the language of the Trial Period Plan stating it does not take effect "unless and until both the Lender and I sign it and the Lender provides me with a copy of this Plan with the Lender's signature" essentially nullifies other express provisions of the Trial Period Plan. Namely, the introductory paragraph and paragraph 3, whereby Defendants promised it would "send [Chavez]" a Modification Agreement that would "modify [her] Loan Documents" if she "compl[ied] with the requirements" of the Trial Period Plan and if her "representations … continue to be true in all material respects."

Here, Chavez alleged she sent Defendants all required information, timely made all payments under the Trial Period Plan, and that Defendants accepted the payments and mailed her the Modification Agreement. Based on the language of the Trial Period Plan, Defendants were *required* to either send Chavez a signed copy of the Trial Period Plan if

8

she qualified for the offer, or send her a notice that she did not qualify for the offer. Defendants did neither; rather, they sent Chavez a copy of the Modification Agreement. This action, when considered with the language of the Trial Period Plan, suggests Defendants concluded that Chavez qualified for a permanent modification despite the fact they did not send Chavez a signed copy of the Trial Period Plan. This interpretation gives effect to all provisions in the Trial Period Plan and does not render an otherwise straightforward offer into an illusion. (*Corvello v. Wells Fargo Bank, NA* (Cal. 9th Cir. 2013) ___ F.3d ___ [2013 U.S. App. LEXIS 16415, *13] ["The more natural and fair interpretation of the [Trial Period Plan] is that the servicer must send a signed Modification Agreement offering to modify the loan once borrowers meet their end of the bargain."].)

The Modification Agreement received by Chavez stated, in part, that after she signed and returned two copies to Defendants, Defendants "*will send me* a signed copy of this Agreement." (Italics added.) Thereafter, the Modification Agreement provided that if Chavez's representations continued to be true and all preconditions to modifications have been satisfied "the Loan Documents *will automatically become modified* on 7/1/2010 (the 'Modification Effective Date') and all unpaid late charges that remain unpaid will be waived." (Italics added.) By this language, defendants expressed their intent to be bound by the Modification Agreement.

The language of the Modification Agreement, however, allowed Defendants to control contract formation by stating elsewhere "that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed

9

by the Lender . . . ."  This language suggests that, even if Chavez satisfied all other conditions, Defendants had no obligation to permanently modify Chavez's loan unless they in fact mailed Chavez a signed copy of the Modification Agreement.  This provision, however, conflicts with Defendants' promises that (1) it would send Chavez a signed copy of the Modification Agreement once she signed and returned two copies of the Modification Agreement to Defendants and (2) "the Loan Documents [would] automatically become modified on 7/1/2010" if Chavez's representations continued to be true and all preconditions to modifications have been satisfied.

Under Defendants' proposed reading of the Modification Agreement, Chavez could do everything required of her to be entitled to a permanent modification, but Defendants could avoid the contract by refusing to send Chavez a signed copy of the Modification Agreement for any reason whatsoever.  We reject this interpretation as we must determine the objective intent of the parties based on reading the Modification Agreement as a whole.  (Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."].)  Here, the language of the Trial Period Plan and the Modification Agreement taken together suggest Defendants concluded that Chavez qualified for a permanent modification when it sent her the Modification Agreement, and assuming Chavez's representations continued to be true and all preconditions to modifications have been satisfied, that Chavez's original loan documents would automatically be modified on the date stated in the Modification Agreement.  (Civ. Code,

10

§ 1642 ["Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."].)

Chavez alleges that after Defendants sent her the Modification Agreement, she timely returned the signed agreement and fully complied with the terms of the Modification Agreement, including making the payments required under it. Defendants accepted Chavez's payments for several months until it returned her check with a letter stating that it did not accept personal checks and payments had to be certified. The Trial Period Plan and the Modification Agreement, however, do not contain a clause requiring that payments be certified. Thereafter, Defendants sold Chavez's home by foreclosure without notice and ultimately forced her to move after serving her with an unlawful detainer summons and complaint.

Liberally construed, the complaint sufficiently alleged facts supporting a claim that Defendants should be equitably estopped to rely on the statute of frauds defense. First, Defendants provided the Modification Agreement which is ambiguous at best and illusory at worse. (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 739 [ambiguity in a standard form contract is generally resolved against the drafter].) The words of the Modification Agreement and Defendants' conduct after Chavez sent Defendants a signed copy of the agreement suggest Defendants intended to stand by the agreement. Defendants' conduct, combined with the language of the Modification Agreement that Chavez's original loan documents would "automatically" be modified on a date certain could be construed as an implied representation that the statute of frauds would not be relied upon.

11

The question whether Chavez adequately pleaded facts to allege equitable estoppel to rely on the statute of frauds defense is a close one. In *Secrest*, the appellate court found that a homeowner's mere payment of money, a down payment in reliance on a forbearance agreement not signed by the party to be charged, was insufficient to raise an estoppel to assert the statute of frauds defense. (*Secrest*, *supra*, 167 Cal.App.4th at pp. 548, 557.) Defendants rely on *Secrest* to argue that Chavez did not sufficiently allege an estoppel because she merely made payments she was already obligated to make under the Trial Period Plan.

In deciding this issue, however, we must look at the Trial Period Plan and the Modification Agreement together. As we discussed, Defendants' conduct of sending Chavez the Modification Agreement, even though they had not sent her a signed copy of the Trial Period Plan suggests Defendants concluded that Chavez qualified for a permanent loan modification. Chavez then detrimentally changed her position by completing and signing the Modification Agreement. The Modification Agreement provided that Chavez agreed that unpaid and deferred interest, fees, escrow advances and other costs would be added to the outstanding principal balance and would accrue interest and that interest would accrue on the unpaid interest "which would not happen without this Agreement." Thus, Chavez incurred additional costs and fees in excess of the amounts she had been obligated to pay under her original loan agreement or the Trial Period Plan. This detrimental change in position is sufficient to allege that Defendants should be estopped from asserting the statute of frauds.

12

Although Chavez has not alleged that Defendants were unjustly enriched, discovery may show unjust enrichment. (See generally, Diane E. Thompson, *Foreclosing Modifications: How Servicer Incentives Discourage Loan Modifications* (2011) 86 Wash. L.Rev. 755, 777 [Noting that servicers can make more money from foreclosing than from modifying and "the true sweet spot lies in stretching out a delinquency without either a modification or a foreclosure."].) Additionally, we are at the pleading stage and discovery may reveal that Defendants signed the Modification Agreement or sent the Modification Agreement with a cover letter that contained a stamped or typewritten name that qualifies as the necessary signature. (*Marks v. Walter G. McCarty Corp.*, *supra*, 33 Cal.2d at p. 820 [signature of the party to be charged need not be at end of writing and be placed at the end of the writing relied upon if a proper signature be found may be printed, stamped or typewritten].)

Finally, we note that Chavez argues the Modification Agreement is not subject to the statute of frauds because it does not modify the loan documents. In making this argument, Chavez cites to a portion of the Trial Period Plan, which provided: "I understand that this Plan is not a modification of the Loan Documents. . . ." While Chavez is correct that the Trial Period Plan did not modify her original loan documents and thus would not be subject to the statute of frauds, she has not alleged a breach of the Trial Period Plan. We express no opinion on whether Chavez can allege a valid claim for breach of the Trial Period Plan. We leave this issue to the trial court should Chavez seek leave to amend to add such a claim.

B.  Wrongful Foreclosure

To obtain the equitable set aside of a trustee's sale or maintain a wrongful foreclosure claim, a plaintiff must allege that (1) defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) plaintiff suffered prejudice or harm; and (3) plaintiff tendered the amount of the secured indebtedness or were excused from tendering.  (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112 (*Lona*).)  Recognized exceptions to the tender rule include when:  (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) the foreclosure sale has not yet occurred.  (*Id.* at pp. 112-113 [outlining the first four exceptions]; *Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1280-1281 [recognizing the fifth exception ].)

The trial Court sustained Defendants' demurrer to this claim finding that to the extent it was based on breach of the Modification Agreement, the claim failed because the Modification Agreement did not comply with the statute of frauds, and to the extent the claim was based on Defendants' failure to serve the requisite notices, Chavez did not plead that she could tender the indebtedness.  Chavez argues that she alleged a valid claim for breach of the Modification Agreement and she was not required to allege tender.  We agree.

14

As discussed above, Chavez properly alleged a cause of action for breach of the Modification Agreement. Under the terms of the Modification Agreement, all late charges were waived and the modified principal balance included any past due amounts and arrearages. Chavez alleged the existence of an enforceable agreement to modify her loan and the payment of all sums due under that agreement until Defendants allegedly breached the agreement by failing to accept her payment. Chavez sufficiently alleged an exception to the tender rule that the foreclosure sale was void because Defendants lacked a contractual basis to exercise the power of sale as Chavez's original loan had been modified under the Modification Agreement and Chavez fully performed under the Modification Agreement until Defendants breached the agreement by refusing payment. (*Bank of America, N.A. v. La Jolla Group II* (2005) 129 Cal.App.4th 706, 710, 711-712 [trustee's sale invalid where "the trustor and beneficiary entered into an agreement to cure the default"]; *Bisno v. Sax* (1959) 175 Cal.App.2d 714, 724 ["Speaking generally, the acceptance of payment of a delinquent installment of principal or interest cures that particular default and precludes a foreclosure sale based upon such preexisting delinquency. The same is true of a tender which has been made and rejected."].) Because Chavez sufficiently alleged a recognized exception to the tender rule, the trial court erred by sustaining the demurrer to her wrongful foreclosure cause of action.

Chavez also alleged improper notice of the trustee's sale, thereby making the sale voidable and subject to the tender requirement. (*Lona*, *supra*, 202 Cal.App.4th at p. 112 ["[A]s a condition precedent to an action by the borrower to set aside the trustee's sale on the ground that the sale is voidable because of irregularities in the sale notice or

15

procedure, the borrower must offer to pay the full amount of the debt for which the property was security."].)  This additional allegation, however, does not invalidate the remainder of this properly pled cause of action.  (*Financial Corp. of America v. Wilburn*, *supra*, 189 Cal.App.3d at p. 778 [a general demurrer does not lie to only part of a cause of action].)

C.  Promissory Estoppel

Promissory estoppel is an equitable doctrine that allows enforcement of a promise that would otherwise be unenforceable based on lack of consideration.  (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 901-902.)  Chavez contends the trial court erred in not allowing her leave to amend to add a cause of action for promissory estoppel because she reasonably relied on the promises in the Modification Agreement to her detriment by not seeking help elsewhere to save her home.  We need not address this issue as we concluded Chavez alleged a valid claim for breach of the Modification Agreement.  Nonetheless, we note that Chavez's proposed allegation that she did not seek help elsewhere to save her home provides additional detrimental reliance supporting Chavez's claim that Defendants should be equitably estopped to rely on the statute of frauds defense.

Nothing in this opinion prohibits Chavez from seeking leave to amend to add new allegations, assert alternative theories of recovery or add new theories of liability.

16

DISPOSITION

The judgment is reversed.  Plaintiff is entitled to recover her costs on appeal.


                                                                    McINTYRE, J.

WE CONCUR:


NARES, Acting P. J.


McDONALD, J.