Filed 6/22/16  Riggs v. Wells Fargo Bank CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHAEL RIGGS et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>    Defendants and Respondents. | G051770<br><br>(Super. Ct. No. 30-2014-00712039)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Craig L. Griffin, Judge.  Affirmed.

Law Offices of Joseph R. Manning, Jr., Joseph R. Manning, Jr., and Craig G. Côté, for Plaintiffs and Appellants.

Kutak Rock, Jeffrey S. Gerardo and Steven M. Dailey, for Defendants and Respondents.

\*          \*          \*

Michael Riggs, in his individual capacity and as co-trustee of the Michael Riggs Revocable Trust, and his wife Evelyn Riggs appeal from the trial court's entry of

judgment after sustaining the demurrer filed by Wells Fargo Bank, N.A., and US Bank National Association, as trustee for Sasco Mortgage Loan Trust 2006-WF1, (collectively, the Lender) to their first amended complaint for breach of contract, negligent misrepresentation, and Civil Code section 2923.6 and Business and Professions Code section 17200 violations.  The Riggses filed their lawsuit to preclude a trustee's sale of their home and to enforce the Lender's asserted oral promise to modify the terms of the loan secured by their home.  They assert the trial court erred in concluding the gravamen of their complaint arose during the pendency of their personal bankruptcy proceedings, and therefore was not actionable in state court.  In other words, their bankruptcy estate owned any causes of action stemming from the Lender's alleged broken promise or misrepresentation that the Riggses' participation in a three-month loan modification trial period plan (TPP) would entitle them to permanent modification of their home loan.

The trial court in its thorough ruling also explained among other alternate grounds that the statute of frauds and the Riggses' conclusory assertion of a material improvement in their financial circumstances were fatal to their claims.  Because the court was correct on these alternate points as a matter of law, we must affirm the judgment and need not address the parties' other contentions.

I

FACTUAL AND PROCEDURAL BACKGROUND

The trial court's detailed ruling includes the information pertinent to our review and, as relevant, we add particulars that the parties emphasize in our discussion below.

The court explained in its minute order: "The court previously sustained the defendants' demurrer with leave to amend.  The plaintiffs filed a first amended complaint in response but such pleading does not cure the defects noted in the prior ruling [by] this court.  On the face of the pleading and judicially noticeable documents, it is clear that the [plaintiffs] filed for bankruptcy during the time period at issue in [their] complaint.  As

2

such, the bankruptcy trustee retains the right to raise any claims arising from the facts alleged in the complaint. Such claims include Wells Fargo's alleged wrongful failure to approve plaintiffs['] loan modification applications.

"It is clear from the amended complaint that the plaintiff[s] lack[] standing to sue on the claims alleged. There has been no showing or allegations by the plaintiff[s] that the bankruptcy trustee abandoned or exempted the claims at issue in this pleading. *Rowland v. Financial Corp.* (D. Hawaii 1996) 949 F.Supp. 1447, 1453. [¶] The argument raised, again, by the [p]laintiffs that they were not aware of these [breach of contract, misrepresentation, or other] claims at the time of their bankruptcy filings is not persuasive because they . . . still fail to cite any authority which would support their argument. Simply put the bankruptcy estate included all legal and equitable interests of the [plaintiff] debtors at the commencement of the [bankruptcy] case, and only the trustee could bring the claims. For this reason alone, the demurrer to each of the causes of action should be sustained without leave to amend."

The trial court noted several additional, alternate bases for sustaining the demurrer as to plaintiffs' breach of contract claim. First, "the [p]laintiffs seek to challenge [and enjoin] the [pending] foreclosure of their property without alleging an immediate ability to tender the amounts due. *Arnold Mgmt. Corp. v. Eischen* (1985) 158 Cal.App.3d 575, 579-580. The [p]laintiffs do not allege any facts which would make application of the tender rule inequitable. As such, the demurrer should also be sustained without leave to amend for failure to allege tender."

Second, "[p]laintiffs do not [adequately] ple[a]d or assert in their opposition any [contractual] obligation by defendants to provide them with a loan modification. Plaintiffs have not alleged that the language of the TPP required the defendants to provide the plaintiffs with a permanent modification. Since loan modifications are subject to the statute of frauds, such must be set forth in a writing. *Secrest v. Sec. National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544

3

[*Secrest*].  The TPP, therefore, will not support the breach of contract cause of action alleged.”

Third, as to both the breach of contract and misrepresentation claims, the court observed:  “The [p]laintiffs allege that the [d]efendants misrepresented to them that they would receive a loan modification if they made additional payments [under the TPP] and that they relied upon the statements when making the additional payments.  The cause fails to allege [the terms of the purported new, permanent contract modification or] the misrepresentation . . . with the required specificity and more importantly does not allege facts which constitute justifiable reliance by the [p]laintiffs.  The law makes it clear that making payments which a borrower is already legally obligated to make cannot support reliance to their detriment.  *Newgent v. Wells Fargo Bank, N.A.* (S.D. Cal. March 2, 2010) 2010 WL 761236.  Additionally, the allegations do not refer to a past or existing fact but rather a promise to do something in the future; such is not the proper basis for a negligent misrepresentation cause of action.  *Magpali v. Farmers Group* (1996) 48 Cal.App.4th 471.”

The trial court also invoked tender in its ruling on the Riggses’ statutory claims, noting, “The [p]laintiffs attempt to plead a violation of Civil Code § 2923.6 cause of action but have not alleged tender . . . as is required to avoid foreclosure.”[1]

Alternately, the court added that, “in order to entitle the borrower to reconsideration” of a loan modification, “under the language of Section 2923.6[,] the material change in their financial circumstances . . . must be ‘documented by the borrower and submitted to the mortgage servicer.’  [Civ. Code § 2923.6(b).]”  (Original

---

[1]     As the Riggses explained in their first amended complaint, section 2923.6 codifies a portion of what has become known as “the Homeowner’s Bill of Rights,” which they described as ensuring “that, as part of the non-judicial foreclosure process, borrowers are not only considered for, but have a meaningful opportunity to obtain, any available loss mitigation options offered by or through the borrower’s mortgage servicer, such as loan modifications or other alternatives to foreclosure.”

brackets.) The court continued: "From the allegations of the third cause [of action] and the exhibits to the FAC [First Amended Complaint], the plaintiffs have not established that they fulfilled such obligations. The [p]laintiffs merely stated that the[re] had been a material change in their financial circumstances and . . . their income had increased."

Finally, the court explained that "[t]he fourth cause is not pled with sufficient facts to constitute a cause of action for violation of § 17200. The cause is derivative of the [p]laintiffs' other claims; since . . . they are insufficient to state a cause[,] this cause is also insufficient for the same reasons."

After sustaining the demurrer, the trial court subsequently entered judgment, and the Riggses now appeal.

## II

## DISCUSSION

### A. *Preliminary Matters*

The Riggses expend considerable effort addressing the tender rule, judicial estoppel in light of their earlier bankruptcy filings (in which they listed none of their present causes of action), and the trial court's conclusion their claims belonged to their respective bankruptcy estates. For the sake of completeness, we observe briefly that a homeowner in default generally must make an unambiguous tender of the entire outstanding debt before challenging an impending or completed nonjudicial foreclosure sale. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112 (*Lona*); *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 445-446.) "'The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not [or would not] result in damages to the [borrower].'" (*Lona*, at p. 112.)

Around the time the Riggses made successive $1,900 payments in July, August, and September 2013 under the Lender's trial period plan that they later claimed entitled them to an "affordable," permanent modification, the mortgage statement they

5

attached to their first amended complaint reflected that their monthly mortgage obligation was almost $5,000, their unpaid payments and late charges dating to 2010 approached $200,000, and their total amount in default by the time of their complaint was over $218,000.

The Riggses' pleadings do not suggest they attempted to pay the amount due to Lender, but as they note, the tender rule is subject to exceptions. For example, "if the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt." (*Lona*, *supra*, 202 Cal.App.4th at pp. 112-113; see also *Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1061 (*Chavez*) [outlining exceptions].) Or as the Riggses emphasize in an unattributed quotation, "[a] tender may not be required where it would be inequitable to do so."[2] (Accord, *Lona*, *supra*, at p. 113.) The Riggses observe that "[i]f the requirement of tender was an absolute rule, homeowners would seldom, if ever, given delinquency payments and the press of foreclosure proceedings, be able to challenge even the most egregious foreclosure and would very well undermine the purpose of California's Homeowner Bill of Rights."

Apart from the tender rule, the Riggses also contend judicial estoppel or standing principles do not bar them from raising their claims, which they did not include in their recent bankruptcy schedules. Evelyn Riggs had filed her personal bankruptcy petition in June 2012 and obtained a discharge of unsecured debt in November 2012.

_____

[2] The Riggses had owned their Yorba Linda home since 2001, and in the 2005, they borrowed $731,500 from Lender, secured by a promissory note and corresponding deed of trust. According to their complaint, a few years later their "financial status began its downward spiral due to the nationwide economic crisis and major cutbacks by employers, downsizing, and wage reduction," compounded by a neighborhood fire that damaged their home, and health crises that included a cancer diagnosis and spinal surgery. The Riggses do not specify these or any other particular facts rendered the tender rule inequitable, but instead assert generally that their pleadings alleged mitigating facts "to such degree" that applying the tender rule "was an abuse of discretion."

Michael Riggs had filed his petition in October 2012 and his discharge of unsecured debt became final in February 2013.

The Riggses acknowledge they alleged in their first amended complaint in this action that their attempts to obtain a loan modification stretched over the period "[b]etween late 2010 and early 2013," during which they complained Lender "dragged [them] across an endless cycle of repetitive document requests, resulting in no favorable resolution." Because this period overlapped with their respective bankruptcy petitions, they recognize the trial court may have believed, albeit mistakenly they claim, that the breach of contract, misrepresentation, and attendant statutory claims they allege here were part of their loan modification attempts as a whole, and therefore belonged to their bankruptcy estate. In other words, all their modification claims were inextricably linked together, and because they first arose before and during the pendency of their bankruptcy petitions, it was for their bankruptcy trustee to raise them in the bankruptcy court, and they had no standing to do so now in state court.

The Riggses claim that, while the trial court's conclusion was understandable because they had "re-allege[d] and incorporate[d] by reference" in each of their substantive causes of action "all paragraphs above," including their claims of an ongoing modification process "[b]etween late 2010 and early 2013," the trial court erred because their causes of action focused on the loan modification trial payment plan they entered "[i]n or around June of 2013," which was months after their bankruptcy discharges. Thus, they insist their causes of action for breach of contract, misrepresentation, and attendant statutory claims related to the TPP had not yet arisen at the time of their bankruptcies, did not belong to their bankruptcy estates, and did not preclude them from asserting them here.

But we need not delve further into or resolve on appeal these issues related to the tender rule or the bankruptcy proceedings for the simple reason that the trial court's

7

alternate holdings require us to uphold the demurrer, particularly for lack of written documentation required by the statute of frauds and Civil Code section 2923.6.

B.     *Breach of Contract*

The statute of frauds disposes of the Riggses' breach of contract and misrepresentation causes of action.  The statute of frauds requires that real estate contracts, including an agreement "to pay an indebtedness secured by a mortgage or deed of trust," must be in writing.  (Civ. Code, § 1624.)  Contractual modifications also must be in writing.  (Civ. Code, § 1698, subd. (c) ["The statute of frauds . . . is required to be satisfied if the contract as modified is within its provisions"].)  Put another way, as the trial court observed in quoting *Secrest*, "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds."  (*Secrest* , *supra*, 167 Cal.App.4th at p. 553.)

Here, the Riggses alleged in their first amended complaint that Lender "approved [them] for a loan modification trial period plan ('TPP') in or around June 2013."  The terms of the plan required them to submit monthly payments of approximately $1,900 in July, August, and September 2013.  The Riggses alleged they "*spoke* with [Lender's] Home Preservation Specialist, Kenneth Foster, who assured Plaintiffs that after Plaintiffs successfully made the three (3) payments, Mr. Foster would try to get Plaintiffs a lower monthly payment.  Mr. Foster further advised Plaintiffs that Plaintiffs needed to successfully complete the three (3)-month trial period plan by making all trial payments on the dates they were due, *and then, Plaintiffs['] loan would be permanently modified*."  (Italics added.)

According to the complaint, once "Plaintiffs timely made all the payments under the TPP agreement" and "the three (3)-month TPP had come to its end," they "attempted to contact Mr. Foster," but "were unsuccessful [and] a different representative of Wells Fargo, Nicholas Fortune, advised that Mr. Foster was no longer with the

8

company and Mr. Foster left no notes/record of Plaintiffs' status with the modification. Mr. Fortune also advised Plaintiffs that their request for a loan modification was denied due to their income, which Plaintiffs only reduced because Wells Fargo's representatives initially advised Plaintiffs to do so in order to qualify."[3]

The Riggses never alleged their claimed TPP modification plan had any written basis. Because the Riggses' allegation that their "loan would be permanently modified" rested on an oral communication, the statute of frauds precluded their breach of contract claim. (Civ. Code, § 1698, subd. (c); *Secrest*, *supra*, 167 Cal.App.4th at p. 553.) The Riggses rely on *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 786 (*West*), and *Chavez*, but those cases do not aid them.

The Riggses cite *West* for "the proposition that when a lender fails to complete a permanent modification after a successful trial plan period . . . , such failure constitutes a cause of action for Breach of Contract." But in *West*, it was undisputed that "the Trial Plan Agreement constituted a written contract." (*West*, *supra*, 214 Cal.App.4th at p. 796.) In particular, the lender there informed the borrower she "had been approved for a TPP" in an approval letter offering "'a permanent workout solution for your loan once the Trial Plan has been completed,'" but cautioning that "'[i]f you do not make your payments on time, or if any of your payments are returned for nonsufficient funds, *this Agreement* will be in breach and collection and/or foreclosure activity will resume.'" (*Id.* at p. 789, italics added.) Here, in contrast, the Riggses never alleged or attached to any of their complaints a written modification agreement.

*Chavez* is similarly unavailing. The Riggses assert under *Chavez* that "Respondents and the [Trial] Court are estopped from asserting a Statute of Frauds defense to Appellants' Breach of Contract cause of action [because] Appellants tendered

---

[3] As we discuss below, the Riggs alleged they subsequently "appeal[ed] the denial based on incorrect income calculations," and corrected their income misstatements, but to no avail because the Lender denied their modification request.

9

payments for the TPP and the Respondent (Wells Fargo) accepted the payments . . . ." *Chavez* recognized that courts "'have the power to apply equitable principles to prevent a party from using the statute of frauds where such use would constitute fraud.' [Citation.]" (*Chavez*, *supra*, 219 Cal.App.4th at p. 1057-1058.)

The Riggses' equitable estoppel claim fails on the merits, however. In *Chavez,* the court acknowledged that "[t]he question whether Chavez adequately pleaded facts to allege equitable estoppel to rely on the statute of frauds defense is a close one." (*Chavez*, *supra*, 219 Cal.App.4th at p. 1061.) The court noted that "[i]n *Secrest*, the appellate court found that a homeowner's mere payment of money, a down payment in reliance on a forbearance agreement not signed by the party to be charged, was insufficient to raise an estoppel to assert the statute of frauds defense." (*Ibid.*) But in *Chavez,* the written "Modification Agreement" that the lender gave the borrower was "ambiguous at best and illusory at wors[t]." (*Ibid.*) The agreement induced the borrower to acquiesce to adding unpaid and deferred sums to the outstanding principal balance, accruing interest on those sums "'which would not happen without this Agreement.'" (*Ibid.*) The court concluded that the "[d]efendants' conduct, combined with the language of the Modification Agreement that Chavez's original loan documents would 'automatically' be modified on a date certain could be construed as an implied representation that the statute of frauds would not be relied upon." (*Ibid.*)

There was no similar written modification agreement or sharp practices here on which to premise estoppel. *Chavez* recognized, as in *Secrest*, that a plaintiff does "not sufficiently allege an estoppel because she merely made payments she was already obligated to make under the Trial Period Plan." (*Chavez*, *supra*, 219 Cal.App.4th at p. 1061.) That was the case here, and therefore the Riggses' attempt to avoid the statute of frauds fails.

C.       *Negligent Misrepresentation*

10

The Riggses' misrepresentation claim similarly fails because of the statute of frauds. Negligent misrepresentation is "form of deceit," which requires "justifiable reliance thereon by the party to whom the misrepresentation was directed." (*Fox v. Pollack* (1986) 181 Cal.App.3d 954, 962.) The gravamen of plaintiffs' deceit claim is that Lender misled them that if they made their reduced payments under the TPP, they would be granted a permanent, "affordable" modification of their original loan agreement. But their complaint reveals that the basis for their claim was an alleged *oral* misrepresentation by a former Lender representative "that if they made the three (3)-month trial plan payments and submitted all requested documents to Defendant, then the loan modification would be converted into a permanent loan modification." Where the statute of frauds requires a written agreement to modify a contract (Civ. Code, §§ 1624; 1628, subd. (c)), it is not reasonable to rely on an allegedly spoken modification offer. [4]

---

[4] At oral argument, the Riggses asserted for the first time promissory estoppel as a basis for their breach of contract claim and, by implication, their misrepresentation claim — based on the allegedly false promise to modify the original loan terms if the Riggses made their payments under the TPP. But promissory estoppel requires, in addition to a clear and unambiguous promise, "(2) reliance by the party to whom the promise made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." (*Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 225.) The Riggses point to no alternate measure or action that allegedly relying on the TPP prevented them from doing to save their home, and thus no injury traceable to the TPP. In these circumstances, there was no reasonable or foreseeable reliance on an allegedly spoken modification offer when a written agreement was required.

11

D.    *Statutory Claims*

The trial court also reasonably could conclude the lack of adequate written documentation doomed the Riggses' substantive claim under Civil Code section 2923.6. As a preliminary matter, the Riggses asserted a technical violation of that code section because the Lender did not provide them with a written denial of their modification request. (See Civ. Code, § 2923.6, subd. (f) ["Following the denial of a first lien loan modification application, the mortgage servicer shall send a *written* notice to the borrower identifying the reasons for denial," italics added].) The purpose of that requirement, however, is to facilitate an appeal (*id.*, subd. (f)(1)), and the Riggses' acknowledged Lender representative Fortune informed them of the reason for the denial (insufficient income), enabling them to take their appeal and address the reason for the denial. They were not successful, but nothing in the legislation requires the lender to award the homeowner a modification. (See Civ. Code, § 2923.4 ["The purpose of the act that added this section is to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain available loss mitigation options," but "Nothing in the act . . . shall be interpreted to require a particular result of that process"].)

The Riggses' substantive claim under Civil Code section 2923.6 also fails as a matter of law. They relied on subdivision (g), which provides that a lender "shall *not* be obligated to evaluate applications from borrowers . . . who have been evaluated or afforded a fair opportunity to be evaluated [for a first lien loan modification] consistent with the requirements of this section, *unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer*." (Italics and bold added.)

The Riggses alleged in their first amended complaint that when the Lender denied their loan modification, they appealed and "resubmitted their financial documents

12

and proof of their correct income value directly to Wells Fargo in October of 2013, after being advised by Wells Fargo's representative that they had been denied for a modification due to their income."

They also alleged that in March 2014, two days before they filed their complaint, their attorney sent Lender "a letter regarding Plaintiffs' loan and the *material change* in their financial circumstances. Specifically, this letter advised Defendants that Plaintiffs' income *had increased*: Plaintiff Michael Riggs's gross monthly salary *had increased*, as well as his income from overtime and commissions. Plaintiffs attached to the letter Plaintiff Michael Riggs's most recent paystubs for the months of January 2014 and February 2014, evidencing the *increase* in income. . . . In addition, Plaintiffs had eliminated a significant amount of personal unsecured debt and monthly expenses, thereby *increasing* the household's gross [*sic*: net] monthly income. As [a] result of Plaintiffs' *material change* in their financial circumstances, they were, and are in a much better position to make affordable mortgage payments. Defendant Wells Fargo, however, has not provided Plaintiffs with an opportunity to make affordable payments based on the *material change* in their financial position." (Italics added.)

The trial court did not err in concluding these allegations of a "material change" failed to state a claim under subdivision (g). "'[A]lthough the precise nature of the documentation required under this code is not clear, the plaintiff must do more than submit a new loan modification with different financial information.' [Citations.] To find otherwise would be to defeat the intent of subsection (g), which is to 'relieve mortgage servicers from evaluating multiple loan applications submitted for the purpose of delay.' [Citation.]" (*Castaneda v. Wells Fargo Home Mortgage* (C.D. Cal. Feb. 26, 2016) 2016 WL 77862, *4.) A letter that "'the borrower has had a change of circumstances [in that] their income and expenses have *changed*'" only attempts to "easily sidestep" subdivision (g)'s documentation requirement. (*Winterbower v. Wells Fargo Bank, N.A.* (C.D. Cal. Mar. 27, 2013) 2013 WL 1232997, *3, italics added.) "[T]o

13

'document' and 'submit' a material change in circumstances means more than simply stating one's expenses decreased and then providing two numbers." (*Ibid.*)

Here, the plaintiffs did not even supply "two numbers" to indicate the degree of change they asserted was "material." True, they attached to the first amended complaint Michael Riggs's pay stubs for two months in 2014, but the stubs did not state any change between their modification application, their assertedly corrected figures upon appeal, or their 2014 "material change" application because the pay stubs did not reference any of those documents. Plaintiffs' appendix on appeal does not include their March 2014 attorney letter to Lender, except an incomplete, barely legible "fax confirmation" portion of the letter, which, like their summary of the letter in their pleading, also only asserts a "material change" without explanation.

A single line in the first amended complaint suggests some unspecified "financial documents showed a gross monthly income just over $6,000," but again no reference is provided to discern whether this figure is material. The figure is not contrasted with income amounts in the initial modification application or the appeal, which are left unstated. Indeed, the $6,000 figure is about the *same* as the Riggses' stated gross monthly income in their bankruptcy schedules, which hardly reflects a material change documenting their ability to pay their mortgage or a reasonable basis for the lender to agree to a modification. In sum, nothing in the first amended complaint provided any reason for a trier of fact to conclude a merely asserted "change" was *material* in relation to, for example, the tender sum due, the applicant's previously documented income figures, or a "net present value" assessment of the loan (Civ. Code, § 2923.6, subd. (f)(3)). Consequently, the court did not err in finding the Riggses' claim fatally flawed.

Because plaintiffs' claim for unfair business practices under Business and Professions Code section 17200 derived entirely from their other claims, and none of those survived demurrer, the trial court correctly sustained the demurrer on this claim too.

14

III

DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal. The supersedeas stay this court entered on October 30, 2015, of the then-pending November 2015 trustee's sale appears to be moot and, in any event, is dissolved.


ARONSON, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

15