Filed 12/29/20  Nia v. Amip Management CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| STEVEN NIA, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> AMIP MANAGEMENT, LLC et al., <br><br> Defendants and Respondents. | B297472 <br><br> (Los Angeles County <br> Super. Ct. No. LC107294) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Virginia Keeny, Judge.  Affirmed.

Lewis R. Landau, for Plaintiff and Appellant.

Ghidotti │Berger and Shannon C. Williams, for Defendants and Respondents AMIP Management, LLC; Ron McMahan; and FCI Lender Services, Inc.

# I.    INTRODUCTION

In a second amended complaint, plaintiff and appellant Steven Nia asserted causes of action against defendants and respondents AMIP Management, LLC (AMIP); Ron McMahan (McMahan); and FCI Lender Services, Inc. (FCI) for wrongful foreclosure, breach of contract, fraud, negligent misrepresentation, and promissory estoppel.[1]  The trial court sustained defendants' demurrer to the second amended complaint without leave to amend and plaintiff appeals.  We affirm.

# II.    BACKGROUND

According to plaintiff's second amended complaint and attached documents, plaintiff owned and lived in a home on Medley Drive in Encino (Property).  On or about September 10, 2007, plaintiff obtained a $1,225,250 loan from Countrywide Bank, FSB.  On September 17, 2017, a deed of trust securing the loan was recorded.

---

[1]    Plaintiff asserted the same causes of action against PROF-2013-S3 Legal Title Trust by U.S. Bank National Association as Legal Title Trustee (U.S. Bank) (erroneously sued as U.S. Bank National Association as Trustee for PROF-2013-S3 Remic Trust, III); Recontrust Company, N.A.; and Barrett Daffin Frappier Treder & Weiss, LLP (Barrett Daffin).  Plaintiff also asserted a single cause of action for constructive trust against Magnum Property Investments, LLC (Magnum).  None of these defendants is a party to this appeal (pursuant to plaintiff's, U.S. Bank's, and Magnum's stipulations, we dismissed plaintiff's appeal with respect to U.S. Bank and Magnum).

On January 30, 2015, Barrett Daffin, the trustee for the deed of trust, commenced foreclosure proceedings by recording a notice of default and election to sell under deed of trust (default notice). The default notice stated that the loan was in default as of May 1, 2013, and the amount of the default was then $124,751.49.

Defendants informed plaintiff of their intention to foreclose on and sell the Property on Monday, May 7, 2018, at 11:00 a.m. On Friday, May 4, 2018, plaintiff had discussions with McMahan, AMIP's founder and manager, about arranging for a financier to purchase the promissory note and deed of trust from AMIP, the promissory note and deed of trust's then current holder. McMahan agreed to a net price of $1,080,000. McMahan represented that AMIP would postpone the foreclosure sale to allow plaintiff to deliver to AMIP the terms of plaintiff's offer in writing.

On Sunday, May 6, 2018, real estate broker R. Joseph Kerendian e-mailed a letter of intent to McMahan.[2] The letter of intent's terms included a net purchase price of $1,080,000, a seven-day due diligence period apparently for the buyer to inspect loan documents, an agreement by AMIP to postpone the foreclosure sale for 45 days, and a 15-day escrow period. The letter of intent identified the buyer as "Shatar Holdings, LLC and/or assignee." The letter of intent concluded, in part, "If accepted, the terms and conditions of this letter may be incorporated into a mutually acceptable Purchase Contract or Escrow Instructions."

---

[2] The letter of intent to which plaintiff's second amended complaint apparently referred was addressed to FCI and dated May 4, 2018.

On Monday, May 7, 2018, at 8:19 a.m., McMahan sent an e-mail to Kerendian stating that "[t]he net proceeds in [the] offer [were] acceptable." McMahan expressly represented that the foreclosure sale scheduled for later that morning would be postponed for one day to May 8, 2018, to allow plaintiff to provide proof of funds.

Plaintiff attached McMahan's May 7, 2018, e-mail to the second amended complaint. The e-mail was sent to Kerendian, plaintiff, and others, and bore the salutation "Hello Everyone." We set forth the e-mail's entire terms:

"The net proceeds in your offer are acceptable, however there are several items that require clarification.

"First, we require proof of funds necessary to purchase the note. Please provide today.

"Second, we will not agree to postpone the sale for 45 days. The sale will be postponed as required for timeframes necessary to complete the transaction. Today, the sale will be postponed for one day pending acceptable proof of funds in the amount of $1,100,000.

"The buyer shall not have seven days to inspect the collateral. The original collateral will be available for inspection in our office in Seal Beach. This should be able to be completed in a couple of hours.

"The seller will draft the form of Mortgage Loan Purchase Agreement to be used for the transaction. Once the buyer has accepted the final form of document, closing will occur within 48 hours.

"Collateral will be immediately deliverable to the buyer upon closing.

"The current borrowers will execute a global release of any and all existing or future litigation related to the loan origination or servicing.

"Thanks, let me know if this is acceptable."

On May 7, 2018, the sale went forward and Magnum purchased the Property for $1,406,000. At 5:11 p.m., that day, Kerendian sent an e-mail to McMahan purportedly attaching proof of funds for the purchase of the Property—a copy of the proof of funds is not a part of the record on appeal.[3] Kerendian noted that earlier that afternoon McMahan had informed him the Property was sold that morning. Kerendian requested that the foreclosure deed not be recorded and the sale be undone. Within minutes, McMahan responded that the proof of funds was unacceptable because it was for "SEPARZADEH MAYER," a party other than the purchaser listed in the letter of intent. McMahan stated that the sale would not be undone.

The second amended complaint alleged that had McMahan not agreed to postpose the sale, plaintiff "intended to use the funds available to him from the financier to pay[ ]off the [p]romissory [n]ote prior to the sale date to prevent the sale of the property or in the alternative to appear at the foreclosure sale as [a] bidder." Plaintiff did not exercise these options in reliance on defendants' false promises, that is, defendants' promises to accept

---

[3] The second amended complaint alleged that plaintiff provided "proof of the availability of funds in excess of $2,400,000," and attached an exhibit that purported to demonstrate such availability. The exhibit attached to the complaint, however, did not include a proof of funds. Further, at oral argument, counsel for plaintiff conceded that plaintiff had not alleged that he had more than $1.1 million available to pay off the promissory note or to bid at the sale.

5

plaintiff's offer and postpone the sale. The only substantive allegation against FCI in the second amended complaint was that it was acting on behalf of U.S. Bank, the holder of the promissory note prior to and at the time of the foreclosure sale.

AMIP, McMahan, and FCI demurred to the second amended complaint. The trial court sustained the demurrer without leave to amend and entered judgment for defendants.

## III. DISCUSSION

### A. *Standard of Review*

"When reviewing a judgment of dismissal based on the sustaining of a demurrer without leave to amend, an appellate court first exercises its independent judgment to determine 'whether the complaint states a cause of action as a matter of law. [Citation.]' [Citation.] '"We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]' [Citation.]" (*Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 766.) "While the 'allegations [of a complaint] must be accepted as true for purposes of demurrer,' the 'facts appearing in exhibits attached to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence. [Citation.]' [Citations.]" (*Id.* at p. 767.)

6

B.    *Analysis*

1.    Wrongful Foreclosure

In sustaining defendants' demurrer to plaintiff's wrongful foreclosure cause of action, the trial court ruled that tender was required. It explained that "[i]n this case, plaintiff alleges he tendered the amount of his debt by bringing to defendants an offer to purchase the deed of trust. A tender must be one of full performance, and must be unconditional to be valid. [(Civ. Code, § 1486.)] In this case, based on a review of the allegations of the complaint and the Notice of Trustee's sale, plaintiff did not tender the full amount of the debt but rather made an offer to purchase the deed of trust for a portion of the amount of the debt. This cannot qualify as tender. Further, as the court previously observed in ruling on previous demurrers, plaintiff does not explain what was illegal, fraudulent or oppressive about the sale. It is undisputed that plaintiff was in default and through bankruptcy and attempted 11th hour negotiations tried but failed to avoid foreclosure."

"To obtain the equitable set-aside of a trustee's sale or maintain a wrongful foreclosure claim, a plaintiff must allege that (1) the defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) the plaintiff suffered prejudice or harm; and (3) the plaintiff tendered the amount of the secured indebtedness or was excused from tendering. [Citation.] Recognized exceptions to the tender rule include when (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4)

7

specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) the foreclosure sale has not yet occurred.  [Citations.].)"  (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062 (*Chavez*).)

To survive a demurrer on a wrongful foreclosure claim, a plaintiff must allege a full tender of the debt.  (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 526.)  At the time of the foreclosure sale, the amount unpaid on the loan, together with costs, was $1,670,399.77.  Plaintiff alleged in his second amended complaint that he offered to pay off the loan at the discounted price of $1.1 million.  Accordingly, he did not allege a tender of the full indebtedness and the trial court properly sustained defendants' demurrer to the wrongful foreclosure cause of action.

Citing *Chavez, supra*, 219 Cal.App.4th 1052, *Blankenchip v. CitiMortgage, Inc.* (E.D.Cal. Dec. 3, 2014, No. 2:14-2309 WBS AC) 2014 WL 6835688; and *Menan v. U.S. Bank N.A.* (E.D.Cal. 2013) 924 F.Supp.2d 1151, plaintiff contends that no tender was required.  These authorities do not support plaintiff's contention.

2.     Breach of Contract

The trial court ruled that the e-mails attached to the second amended complaint showed that the parties never had an enforceable written agreement.  "Instead, the parties were still negotiating terms of a contract that was acceptable to both.  They were unable to come to acceptable terms with an acceptable proof of funds in order to stop the foreclosure."

Plaintiff does not address his breach of contract cause of action in his opening brief on appeal, and expressly disavows any

8

claim of error based on a breach of contract theory in his reply brief. We accept plaintiff's waiver.

3. Fraud, Negligent Misrepresentation, and Promissory Estoppel

The trial court addressed together defendants' demurrer to plaintiff's fraud and promissory estoppel causes of action.[4] It ruled, in part, "Plaintiff's claim is based on the alleged lie defendant told in representing that the foreclosure would be postponed one day. But in examining the e[-]mail exchange it is clear that no such firm representation had been made. Instead, the parties were negotiating an 11th hour sale of the deed of trust. There is no statement made upon which plaintiff could have reasonably relied. Instead, in his e[-]mail dated May 7 at 8:19 a.m., Mr. McMahon [*sic*] was making a [counteroffer] which

---

[4] The trial court's tentative ruling, which the court adopted as its final order, did not expressly address plaintiff's negligent misrepresentation cause of action. Because the record on appeal does not contain a reporter's transcript of the demurrer hearing, we cannot determine whether the court addressed plaintiff's negligent misrepresentation cause of action during oral argument. Plaintiff does not address the court's omission in his briefs on appeal. Because we review a trial court's ruling on a demurer de novo, and, as we explain below, plaintiff's negligent misrepresentation cause of action, like his fraud and promissory estoppel causes of action, required that McMahan's alleged promise to postpone the foreclosure sale for one day damaged plaintiff—an element the sale deed and plaintiff's counsel's representations at oral argument disprove—any trial court error in failing to address expressly the negligent misrepresentation cause of action was harmless.

9

required further acceptance or negotiation.  Plaintiff did not respond prior to the sale to state that he accepted this offer or to make a [counteroffer].  Accordingly, based on the alleged contractual documents submitted by plaintiff, there was no contract or firm promise prior to the sale."

As an alternative ground for sustaining the demurrer, the trial court concluded that plaintiff failed to allege detrimental reliance sufficiently:  "If plaintiff had known . . . defendant was lying [about postponing the sale] what would or could he have done differently?  Plaintiff states he could have used the funds available to him by the financier to pay off the promissory note prior to the sale date or appear at the foreclosure sale as a bidder.  Significantly, plaintiff fails to allege that the financier (who was to pay $1[.1 million] to buy the deed of trust) could make available the amount owed under the loan $1,670,399.77."

The elements of fraud, negligent misrepresentation, and promissory estoppel share an element:  the plaintiff must have been damaged by the defendant's alleged statement.  (*Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.* (2018) 19 Cal.App.5th 399, 428, ["The elements of fraud [include] . . . resulting damage"], internal quotation marks omitted; *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 243 ["The elements of negligent misrepresentation [include] . . . resulting damage"]; *Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945 ["The elements of a promissory estoppel claim [include] . . . the party asserting the estoppel must be injured by his reliance"], internal quotation marks omitted.)  Each of plaintiff's fraud, negligent misrepresentation, and promissory estoppel causes of action alleged that plaintiff was damaged as follows:  in the absence of

10

McMahan's agreement to postpone the sale, he "intended to use the funds available to him from the financier to pay[ ]off the [p]romissory [n]ote prior to the sale date to prevent the sale of the property or in the alternative to appear at the foreclosure sale as [a] bidder.  However, in reliance to the promises made by [d]efendant[s], [p]laintiff did not pursue the said options and changed his position in reliance upon the promise of acceptance of his offer and postponement of the foreclosure sale by . . . [d]efendants."

The amount owed under the loan was $1,670,399.77 and the property sold for $1,406,000.  Because plaintiff had available only $1.1 million, he could not have paid off the promissory note or successfully bid on the property at the sale.  Accordingly, he did not suffer damage.

## IV.   DISPOSITION

The judgment is affirmed.  Defendants are awarded their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


KIM, J.

We concur:


BAKER, Acting P. J.


MOOR, J.